## HOLMES AMMIDOWN *vs.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE GRANITE BANK.

A deed of a certain described lot of land, with a store thereon, "together with all the rights, easements, privileges and appurtenances thereto belonging, and now had and enjoyed therewith; being the same premises which A. B. conveyed to me," does not include a lot of land in the rear of the described premises, which was not conveyed by A. B. to the grantor, although the grantor owns the same and has built thereon a store connected with the store on the described premises by a covered bridge, and has agreed with the owners of adjoining lots that such rear store shall not be rented or occupied by any person except the owner or occupants of the front store, as an appendage to the same, and that no building shall ever be erected upon such rear lot except of a specified height.

WRIT OF ENTRY to recover a parcel of land with a building thereon, situated in the rear of a certain store on Milk Street in Boston. The following facts were agreed in this court:

On the 5th of August 1842, Henry M. Holbrook, under whom both parties claimed title to the demanded premises, received a

deed of a lot of land on Milk Street, with a store thereon, from Edmund Dwight, James K. Mills and Charles H. Mills, and on the same day mortgaged the same to the Massachusetts Hospital Life Insurance Company to secure a certain sum. On the 18th of September 1845, Holbrook received a deed of a lot of land in the rear of several lots fronting upon Milk Street, including the demanded premises, from Lucius M. Sargent; and afterwards conveyed portions thereof to Abbott Lawrence and to Chace & Grew, retaining the demanded premises, being the portion in the rear of his lot upon Milk Street. On the 8th of April 1846, Holbrook, Lawrence, Chace & Grew and others executed an indenture, which recited that they were the owners of a block of six stone stores on Milk Street, extending easterly from the corner of Pearl Street, and contained the following provisions:

" Now be it known that we do hereby mutually grant, covenant and agree, each of us severally, for himself and his respective heirs and assigns, to and with the other of the parties hereto, their heirs and assigns, jointly and severally, in manner following, that is to say : the several yards in the rear of said stores, respectively, extending back from said stores about fifteen feet, shall be forever kept open, as they now are and have been since the erection of said stores, for the common use and benefit of the parties hereto, their respective heirs and assigns ; and each of the parties hereto, their respective heirs and assigns, shall forever have, hold and enjoy the right to pass and repass through and over the said yards lying between his particular store and Pearl Street, and to convey any and all goods to and from his said particular estate to and from said Pearl Street ; and neither of the parties, his heirs and assigns, shall at any time hereafter build upon the said land heretofore used as a passage way in the rear of their respective stores, nor incumber the same in any way with coal, boxes or any other article, any further than may be necessary in receiving and delivering goods, and hoisting and lowering the same into and out of their several stores ; it being the meaning and intention of the parties hereto that no one of them, his heirs and assigns, shall ever erect any building in or upon their respective yards aforesaid, but that the

said land, so used as a passage way in the rear of their respective stores, shall always be kept open and unincumbered, for the benefit of light and air to the estates of all the parties, as well as for the purpose of passing and repassing as aforesaid. And the said Holbrook, Lawrence, Chace & Grew, their respective heirs and assigns, shall have and enjoy the privileges hereby granted for the benefit and accommodation of their respective estates, on the southerly side of their respective yards aforesaid, in the same manner and to the same extent they are herein granted for the benefit and accommodation of their several estates fronting on Milk Street. Provided, however, that nothing herein contained shall preclude the said Lawrence, Holbrook and Chace & Grew, from building covered bridges from their respective stores aforesaid to the stores about to be erected by them on their respective estates in the rear of their respective yards aforesaid ; said bridges to be built, commencing and running from the first floor above the cellars of the stores, in Milk Street, of said Lawrence, Holbrook and Chace & Grew, and not to exceed in height twenty-four feet from the pavement running to the corresponding stories of the stores now being built in the rear. And it is mutually agreed and covenanted that neither of said back stores shall be rented or occupied by any person or persons except the owner or occupants of the abovementioned stores on Milk Street, as appendages to the same. And, in consideration of these last grants, the said Holbrook, Lawrence and Chace & Grew severally covenant with each of the other parties hereto that no building shall ever be erected on their respective rear lots aforesaid, the height of which shall exceed thirty-six feet six inches from the said yard to the eaves, and that the pitch of roof of said buildings respectively shall not exceed nine inches to the foot."

In 1846, Holbrook, Lawrence, and Chace & Grew erected buildings on their rear lots, leaving a passage twenty-one feet and three inches wide between the front and rear buildings, and connecting said buildings by a covered bridge, according to the provisions of the indenture. On the 10th of July 1854, Holbrook executed to George R. Sampson a mortgage of " all that lot

of land in said Boston, with the new store thereon, bounded northwesterly by Milk Street, on two lines, six feet ten inches, and nineteen feet five inches; southwesterly on land and store now or late of Almy, Blake & Patterson, eighty-five feet and seven inches; southeasterly on land late of Lucius M. Sargent, in part, and in part on land now or late of Edward Clarke and others, thirty-one feet five inches; and northeasterly by land and store now or late of Edward Clarke and E. L. Penniman, eighty-seven feet three inches, or however otherwise bounded or described; together with all the rights, easements, privileges and appurtenances thereto belonging, and now had and used and enjoyed therewith; being the same premises which Messrs. Edmund Dwight, James K. Mills and Charles H. Mills conveyed to me by deed dated Aug. 5, 1842, recorded," &c. On the 10th of September 1855, Sampson assigned this mortgage to the tenants, who in the next month entered the premises for foreclosure, for breach of condition. On the 12th of January 1856, the Massachusetts Hospital Life Insurance Company assigned their mortgage to the tenants, who in the following March entered the premises for foreclosure for breach of condition, since when they have been in possession thereof, and of the demanded premises. On the 13th of September 1855, Holbrook conveyed the demanded premises to the demandant.

The building on the demanded premises has always been leased with and as a part of the store on Milk Street, and has always been used and occupied therewith. The whole has always been leased together for one sum. The only mode of access to the building standing on the demanded premises is through the passage established by the indenture, opening upon Pearl Street, and by the bridge from the front store.

*J. G. Abbott*, for the demandant, cited *Doane* v. *Broad Street Association*, 6 Mass. 332; *Grant* v. *Chase*, 17 Mass. 443; *Plymouth* v. *Carver*, 16 Pick. 183; *Hurd* v. *Curtis*, 19 Pick. 459; *Johnson* v. *Jordan*, 2 Met. 234; *Parish* v. *Whitney*, 3 Gray, 516.

*H. C. Hutchins*, for the tenants. The rule that land cannot pass as appurtenant to land is not an invariable one; and the

later cases have firmly established the doctrine that it is a question of intention.  2 Washburn on Real Prop. 627, and cases cited.  *Hill* v. *West*, 4 Yeates, 142.  *United States* v. *Harris*, 1 Sumner, 21.  *Buck* v. *Nurton*, 1 B. & P. 57.  *Jackson* v. *White*, 8 Johns. 59.  *Gibson* v. *Brockway*, 8 N. H. 465.  *New Ipswich Factory* v. *Batchelder*, 3 N. H. 190.  *Otis* v. *Smith*, 9 Pick. 293.  *Salisbury* v. *Andrews*, 19 Pick. 250.  *Cook* v. *Farrington*, 10 Gray, 70.  *Simpson* v. *Dendy*, 8 C. B. (N. S.) 433.  4 Cruise Dig. (Greenl. ed.) tit. xxxii. c. 21, § 30.  It is manifest that Holbrook intended to include the demanded premises in the mortgage, because, 1. They were then actually used and enjoyed with the front store.  2. Under the indenture, the rear store could only be rented and occupied by the occupant of the front store, and it was expressly made an appendage to the front store.  3. If severed from the front store, the demanded premises would be wholly inaccessible.  No right to use the passage was reserved, unless the rear store should be occupied with the front store.  4. The tenants took, with the front store, the sole right to use the covered bridge, which extends about six feet over the demanded premises.

CHAPMAN, J.  The demandant claims title under a deed from Henry M. Holbrook, who owned the land, unless he had conveyed it to the grantors of the tenants.  If he had thus conveyed it, he had done so by a deed of mortgage to George R. Sampson, dated July 10, 1854, which mortgage was assigned to the tenants, and foreclosed by them.  The case, therefore, depends upon the construction which shall be given to the mortgage.  The land therein described is, " all that lot of land in said Boston, with the new store thereon, bounded northwesterly by Milk Street, on two lines, six feet ten inches, and nineteen feet five inches; southwesterly on land and store now or late of Almy, Blake & Patterson, eighty-five feet and seven inches; southeasterly on land late of Lucius M. Sargent, in part, and in part on land now or late of Edward Clarke and others, thirty-one feet five inches ; and northeasterly by land and store now or late of Edward Clarke and E. L. Penniman, eighty-seven feet three inches, or however otherwise bounded or described."

Thus far the description refers to adjoining lots as the boundaries of the lot conveyed; but guards against mistakes that may thus be made in the description of the lot conveyed, by the phrase, " or however otherwise bounded or described." The description proceeds, " togéther with all the rights, easements, privileges and appurtenances thereto belonging, and now had and used and enjoyed therewith ; being the same premises which Messrs. Edmund Dwight, James K. Mills and Charles H. Mills conveyed to me by deed dated Aug. 5, 1842, recorded," &c.

The last clause excludes the demanded premises; for it is conceded that the deed of Dwight and others did not include them. If therefore they passed by the mortgage, it must be under the clause granting all the " rights, easements, privileges and appurtenances thereto belonging, and now had and used and enjoyed therewith." The question arising in this case is, whether the premises were conveyed by these words. All these words have a well defined legal signification. The word " rights," as applied to property, refers to the free use, enjoyment and disposal of it. 1 Bl. Com. 138. It also includes the estate *in esse* in conveyances. Co. Litt. 345 b. It is often included in the word " title," which is the more general word. Ib. Such being its definition, it cannot be construed to include an additional tract of land. The next word used is " easements," and it is not contended that the fee of land passes by this word. If the demanded premises are included, it must be by virtue of the phrase " privileges and appurtenances." The last word is the one relied on by the tenants. It is conceded that generally one tract of land cannot pass as an appurtenance to another tract. This point is discussed in *Leonard* v. *White*, 7 Mass. 6. And in *Tyler* v. *Hammond*, 11 Pick. 124, Wilde, J. says it is well settled that land cannot pass as appurtenant to land. The technical signification of the word " appurtenances " is not large enough to include a distinct parcel of land, which is not described in the deed. In construing a deed, the courts seek to ascertain the intention of the grantor, and construe his language most strongly against himself; but the intention is to be gathered from the language of the instrument, and the words

he uses are to be taken in their usual legal signification, unless it appears from the connection in which they are used that he has attached a different meaning to them. It has accordingly been held that, in a devise, land may pass under the word " appurtenances," the intention of the testator being gathered from all parts of his will, and from his own habits in respect to the use of the property. *Otis* v. *Smith*, 9 Pick. 293. The court seem to regard a will as different from a deed. It is so in two respects: 1. A testator is not presumed to use language as accurately as a grantor ; 2. A will is presumed to dispose of all the estate of the testator, and, if there is no other disposition of the fee of that which is given as an appurtenance, a presumption is raised that the word was intended to include the fee.

But it is also true that, in a grant, the words will be construed according to the intent of the parties as manifested by the whole instrument, and the word " appurtenances " is subject to this rule of construction ; so that, if it is apparent to the court that the grantor used it to express an idea different from its technical signification, they will construe it accordingly. *Whitney* v. *Olney*, 3 Mason, 280, and cases cited. 2 Washburn on Real Prop. 627. In *Hill* v. *West*, 4 Yeates, 142, this principle of interpretation was carried so far, in respect to a deed made in 1704, that city lots laid out under Penn's survey of the Liberties of Philadelphia were held to pass as appurtenant to a large tract of land in the county at a considerable distance from them. But the case was peculiar, and is valuable only as an extreme illustration. Where it is not clear that a grantor used a technical word in an unusual sense, it is just towards all parties to presume that he used it in its ordinary and technical sense.

It is held that flats may pass in the partition of real estate by commissioners under the phrase, " a wharf and dock, with al the privileges and appurtenances thereto belonging." *Doane* v. *Broad Street Association*, 6 Mass. 332. But the court did not regard the wharf as land, but as a structure erected upon the land; so that land might pass with it as appurtenant to it, on the same ground that it will pass with a mill or a messuage. In that case it was clear from the return of the commissioners

that they intended to assign the flats with the wharf. In *Ashby v. Eastern Railroad*, 5 Met. 368, a deed of a wharf is held to convey the adjoining flats as appurtenant. But in all these cases the land passes with the thing described as parcel rather than as appurtenant. 2 Washburn on Real Prop. 627.

The deed of mortgage conveys the land with the new store thereon ; and it is necessary to consider whether the store on the land mortgaged was so connected with the store on the demanded premises that it can be regarded as parcel of it, and so pass together with the land on which it stood. If such a construction can be given to the deed, the demanded premises may pass as parcel of the new store Holbrook bought of Dwight and others in 1842. There was then a store on the lot. He bought the demanded premises in 1845 of Lucius M. Sargent, the deed including a larger tract of land, which he afterwards sold to other parties. In 1846 an indenture was made between him and other parties, providing for a passage way in the rear of their several stores to Pearl Street. Three of the parties, including Holbrook, owned lots in the rear of this passage way, the lot of Holbrook being the demanded premises. They granted to each other, their heirs and assigns, rights of way over a strip about fifteen feet in width, each owner for himself covenanting that it should remain unincumbered. But it was agreed that Holbrook, Lawrence and Chace & Grew, who owned the rear lots, might erect back stores on their rear lots, to which they might obtain access by means of covered bridges at a certain height above the ground, and of a certain construction, and it was mutually agreed and covenanted that no one of said back stores should be rented or occupied by any person or persons, except the owner or occupants of the above mentioned stores on Milk Street, as an appendage to the same. It was also agreed that the buildings on the rear lots should never be above a certain specified height, and that the roof should be of no more than a specified inclination. A back store was built by Holbrook in 1846, and a covered bridge leading to it, in conformity with the provisions of this indenture, and he continued to occupy the back store in connection with the front store till

after he made his mortgage to Sampson in 1854. Is this back store to be regarded as part of the front store, so as to pass as parcel of it, and thus carry with it the land on which it stands? Perhaps by the name "store" the whole would pass, had the deed contained no further description; but when the grantor adds the words, " being the same premises which Messrs. Edmund Dwight" and others " conveyed to me," this exception excludes what was not thus conveyed to him, and of course excludes the demanded premises. If then he intended to convey the demanded premises, he was unfortunate in his choice of language; for it would do violence to the language to hold that the back store and lot are included in the deed.

The fact that the back store could not be approached for ordinary use except through the front store has some tendency to show that he intended to convey both. But this fact is not sufficient to control the language of the deed ; especially as he had provided a passage way to the back store independently of the front store, though the purposes for which he might approach it and occupy it were very limited. Such a restriction upon its use may affect its value, but that consideration is not very important in construing the deed. There is nothing, either in the words of the instrument or the situation of the property, to control the express declaration, that the property conveyed by the mortgage was the same that Messrs. Dwight and others conveyed to him. *Judgment for the demandant.*