THE CITY OF GENEVA, Appellant, *v.* ROBERT W. HENSON et al., Respondents.

Condemnation proceedings — issues of fact — issue of title — lands under waters of Seneca lake — ownership thereof — when descriptions fail to include such lands.

Section 3367 of the Code of Civil Procedure, providing that issues raised by the petition and answer in condemnation proceedings may be tried and determined by the court or a referee appointed for that purpose, applies only to issues involving facts essential to be shown as a basis for instituting the proceeding. It is not the meaning of the section that an issue of title framed by such pleadings should be sent to a referee for determination. The Supreme Court has, however, general jurisdiction of the proceeding, and where an issue of title was referred, with

other issues, by stipulation of the parties in open court, and the question tried and determined by the referee without objection, the judgment entered upon his report is binding upon the parties, so far as jurisdiction is concerned.

The fact that the referee decided that the defendant was the owner of all of the premises in question, even if correct, does not sustain a finding that the condemnation proceedings should be dismissed. The petitioner should be allowed to continue the proceeding for the purpose of acquiring all the defendant's title, whether it was the ownership in fee or not, even if it were necessary to amend the petition.

The city of Geneva, claiming under a legislative grant (L. 1905, ch. 665), to own certain lands upon the shore of Seneca lake, formerly under water but now partially reclaimed and filled in, instituted condemnation proceedings for the purpose of acquiring title to premises involved in this proceeding, alleging that it was the owner of the fee and that the defendant had certain easements therein. The defendant not only denied the usual allegations of the petition, but alleged that he was the owner in fee of the lands in question. By consent of the parties, the issues were heard and determined by a referee appointed by the court. He found that the state of New York, under whom the petitioner claimed title, had, in 1786, ceded to the commonwealth of Massachusetts certain lands, including the premises in question, and that since that date it had not been the owner or in possession of the latter; that the chain of conveyances from the commonwealth of Massachusetts down to 1845 covered the lands in dispute; that, subsequent to 1845, certain of such conveyances, instead of describing the lands therein conveyed as bounded "by Seneca Lake," or by lines extending "to Seneca Lake," described them as bounded by lines running on and along the shore of the lake between fixed points thereon. *Held,* that, under the findings, the state of New York had, before its attempted grant to the petitioner, become divested of any proprietary ownership of the premises in question; that applying the rule that lines running to a fixed point on the shore and then along the shore of a body of water do not carry title to the middle of that body, the description of the deeds subsequent to 1845, above stated, did not describe and convey to the grantees therein the title in fee to the bed of the lake as it then was and did not include so much of the premises in dispute as were then covered with water.

The conveyances contained a general clause covering docks, buildings, fixtures and rights and privileges in the adjoining lake belonging or appertaining to the grantor, or to the specifically described premises. *Held,* that, while this clause, taken in connection with the conveyance of the uplands by definite boundaries, may be construed as including docks and buildings extending beyond such boundaries and the fee of the land on which they stood, and as conveying any right or easements in the lake and over the bed thereof belonging to the grantor, incident or necessary to the enjoyment of such uplands, it should not be con-

strued as transferring the title in fee to all the bed of the lake assumed to have been included in the terms of the early conveyances. *Held,* therefore, that the judgment appealed from was erroneous in so far as it determined that the defendant was the owner and in possession of all of the premises of which condemnation is sought.

*City of Geneva* v. *Henson,* 121 App. Div. 893, reversed.

(Argued April 7, 1909; decided June 15, 1909.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered October 25, 1907, affirming a judgment in favor of defendants entered upon the report of a referee.

The appellant instituted condemnation proceedings under a statute hereinafter to be referred to for the purpose of acquiring title to the premises involved in this proceeding for use as a public park. By its petition, amongst other things, it alleged that it was the owner in fee of the premises in question and that the respondent Henson had certain easements. The latter by his answer not only denied the usual allegations of facts essential to enable the appellant to maintain condemnation proceedings, but also alleged that he was the owner in fee of said premises. All of the issues thus raised were by consent of the parties referred to a referee for hearing and determination and he found in favor of the appellant on all thereof except that of title to the premises which he decided in favor of the respondent, and the only questions presented for our decision are those springing out of that particular determination.

Some of the important facts which are involved in the dispute of title are as follows:

The premises in question are situate on the west shore of Seneca lake at what is known as Geneva harbor. They are included within the boundaries of the lands and territory ceded by the state of New York to the commonwealth of Massachusetts in accordance with the historical and well-known agreement of commissioners reached at Hartford in 1786 for the purpose of settling territorial disputes between the two states. Subsequently, Massachusetts granted and con-

29

veyed lands and territory which included the same to private individuals, and thereafter a series of conveyances were executed whereby, as claimed by respondent, there was passed to him the title to and ownership of said premises, he claiming to be in possession thereof at the time of the commencement of this proceeding. At the time of the execution of the treaty between Massachusetts and New York, and for a long time thereafter, a considerable portion of the premises of which condemnation is sought lay under the waters of Seneca lake, but various grantees and owners of the adjacent uplands under said conveyances filled in in front of their lands, so that prior to the conveyance to respondent in 1889 such uplands had been by a very substantial distance extended over the space formerly covered by the waters of the lake. In 1900 the state built a bulkhead and constructed a towpath for purposes of navigation some little distance out from what was then the actual shore line of the lake, and the former has now become the practical shore line, and is the outer boundary of the premises sought to be condemned. Thereafter some filling in of his premises towards said bulkhead was done by respondent, and other property owners did the same thing. After such filling in, however, a considerable space of an unsightly and unhealthy character was left between said bulkhead and the former uplands, and in 1905, by chapter 665 of the Laws of that year, the state of New York granted to the city of Geneva all the interest of the state in said premises and authorized it to institute condemnation proceedings under the Code of Civil Procedure for the purpose of acquiring said and other premises for the purposes of a public park. Seneca lake is an inland lake 34 68/100ths miles in length by 3 46/100ths miles at its greatest width, and having a surface area of 61 3/4ths square miles. With one exception it is the largest lake wholly within the territorial limits of the state of New York, and is navigable in fact and has at all times been used as a navigable highway since there was any occasion for such navigation.

The referee made extensive findings of fact upon the sub-

ject of the title to the premises in question, to some of which
reference will be made in the following opinion.

*Arthur J. Hammond* and *W. Smith O'Brien* for appellant. Seneca lake is a navigable body of water and as such
the title to its bed was vested in the people of the state of
New York at the time of the conveyance to the city of
Geneva. (*Langdon* v. *Mayor, etc.,* 93 N. Y. 129; *K. I. Co.*
v. *Schultz,* 116 N. Y. 382; *People* v. *Tibbets,* 19 N. Y. 523;
*People* v. *Canal Appraisers,* 33 N. Y. 461; *Sage* v. *Mayor,
etc.,* 154 N. Y. 61; *Seneca Nation* v. *Christie,* 126 N. Y.
122.) No part of the bed of a navigable body of water will be
deemed to have been conveyed by a grant from the sovereign
unless express terms are used referring to it as such in the
grant. (Gould on Waters [3d ed.], § 36; *Inhabitants of
East Haven* v. *Hemingway,* 7 Conn. 186; *Town of Middle-
town* v. *Sage,* 8 Conn. 221; *Church* v. *Meeker,* 34 Conn. 421;
*Commonwealth* v. *City of Roxbury,* 75 Mass. 451; *Canal
Comrs.* v. *People,* 5 Wend. 423, 451; *State* v. *P. G. Co.,* 22
S. C. 50; *Rosborough* v. *Picton,* 12 Tex. Civ. App. 113;
*Sage* v. *Mayor, etc.,* 154 N. Y. 61; *Matter of Mayor, etc.,*
182 N. Y. 361.) The lands under the waters of Seneca lake
were not conveyed by the state of New York to the state of
Massachusetts by the treaty of Hartford. (*Morris* v. *United
States,* 174 U. S. 196; *Trustees of East Hampton* v. *Vail,* 151
N. Y. 463; *De Lancey* v. *Piepgras,* 138 N. Y. 26; *People* v.
*B. R. R. Co.,* 126 N. Y. 29; *Woodworth* v. *Janes,* 2 Johns.
Cas. 417; *Whitaker* v. *Cone,* 2 Johns. Cas. 58; *Burbank*
v. *Fay,* 65 N. Y. 57; *Livingston* v. *Ten Broeck,* 16
Johns. 14; *Jackson* v. *Wood,* 13 Johns. 346; *Adams* v. *Froth-
ingham,* 3 Mass. 360; *Codman* v. *Winslow,* 10 Mass. 149;
*Attorney-General* v. *Parker,* 3 Atk. 576.) Assuming, for
the purpose of argument, that the bed of Seneca lake was
conveyed to the state of Massachusetts, the defendant Henson
has not succeeded to the title of that state. (*Child* v. *Starr,*
4 Hill, 369; *Starr* v. *Child,* 5 Den. 599; *Halsey* v. *McCor-
mick,* 13 N. Y. 296; *Gouverneur* v. *Nat. Ice Co.,* 134 N. Y.

355.) The defendant Henson has not acquired title to the lands involved in this proceeding by adverse possession. (*Beach* v. *Mayor, etc.*, 45 How. Pr. 357, 368; *Corning* v. *T. I. & N. Factory*, 34 Barb. 529; *McFarlane* v. *Kerr*, 23 N. Y. Super. Ct. 249; *Wheeler* v. *Spinola*, 54 N. Y. 377; *De Lancey* v. *Piepgras*, 138 N. Y. 26, 46; Code Civ. Pro. § 362; *G. V. C. R. R. Co.* v. *Slaight*, 49 Hun, 35, 39; *People* v. *Arnold*, 4 N. Y. 508; *Van Buskirk* v. *Warren*, 2 Keyes, 119; *Jackson* v. *Bodle*, 20 Johns. 182; *Church* v. *Gilman*, 15 Wend. 656.) Assuming that the defendant Henson is the owner in fee of the lands involved in this proceeding, the plaintiff is entitled to acquire such title in this proceeding and the referee erred in directing that the petition be dismissed. (*Scheer* v. *L. I. R. R. Co.*, 127 App. Div. 267.)

*Edward R. O'Malley, Attorney-General* (*Denis O'Brien* of counsel), for the state of New York, intervening. The state since its organization has been the owner of the bed of the lake and could lawfully grant a portion of the same to the city of Geneva for a public purpose. (*I. C. R. R. Co.* v. *Illinois*, 146 U. S. 387; *Shively* v. *Bowlby*, 152 U. S. 1; *Coxe* v. *State*, 144 N. Y. 386; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *K. I. Co.* v. *Schultz*, 116 N. Y. 382; *People* v. *Tibbets*, 19 N. Y. 523; *People* v. *Canal Appraisers*, 33 N. Y. 461; *Sage* v. *Mayor, etc.*, 154 N. Y. 61; *Seneca Nation* v. *Christie*, 126 N. Y. 122.) The state of New York did not, by the treaty or deed of cession to Massachusetts, convey any of the navigable waters within the boundaries of the state. (Gould on Waters [3d ed.], § 36; *Inhabitants of East Haven* v. *Heminway*, 7 Conn. 186; *Town of Middletown* v. *Sage*, 8 Conn. 221; *Church* v. *Meeker*, 34 Conn. 421; *Commonwealth* v. *City of Roxbury*, 75 Mass. 451; *Canal Comrs.* v. *People*, 5 Wend. 423; *State* v. *P. G. Co.*, 22 S. C. 50; *Rosborough* v. *Picton*, 12 Tex. Civ. App. 113; *Sage* v. *Mayor, etc.*, 154 N. Y. 61; *Matter of Mayor, etc.*, 182 N. Y. 361; *Trustees* v. *Strong*, 60 N. Y. 56; *Trustees* v. *Smith*, 118 N. Y. 641.) The grantees of the state of Massachusetts, from

whom the defendant claims title, did not acquire any title to the bed of Seneca lake. (*Child* v. *Starr*, 4 Hill, 369; *Starr* v. *Child*, 5 Den. 599; *Halsey* v. *McCormick*, 13 N. Y. 296; *Gouverneur* v. *Nat. Ice Co.*, 134 N. Y. 355.)

*Philip N. Nicholas* and *John G. Farwell* for respondents. The state of New York at no time had undisputed title to the land in question, and since the mutual treaty of cession in 1786, with Massachusetts, has had no title whatsoever in the soil. (*Howard* v. *Moot*, 64 N. Y. 262; *Smith* v. *City of Rochester*, 92 N. Y. 463.) As an upland owner, defendant Henson was entitled to the natural accretion to his land, and this right cannot be arbitrarily severed from the realty. (*Gould* v. *H. R. R. R. Co.*, 6 N. Y. 552; *Steers* v. *City of Brooklyn*, 101 N. Y. 51; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129.) In the event of its being determined that Henson is the owner of the premises, there was no error in the referee's finding that the defendants are entitled to judgment, dismissing the proceedings, with costs. (Code Civ. Pro. § 3369.)

HISCOCK, J. These proceedings were instituted under the provisions of the Code of Civil Procedure for the condemnation of certain premises for a public park and the parties seem to have assumed that the dispute which has arisen upon the pleadings as to the title to the premises sought to be condemned was one of the issues to be tried under the provisions of section 3367 of the Code before the matter was sent to commissioners for the purpose of appraising damages. Said section provides that "The court shall try any issue raised by the petition and answer at such time and place as it may direct, or it may order the same to be referred to a referee to hear and determine, and upon such trial the court or referee shall file a decision in writing," &c. In this case the issues were sent to a referee.

In our opinion, this section does not contemplate or provide for the preliminary trial of such a dispute of title as was here presented. Section 3360 provides that the petition shall set forth certain things, amongst them the public use for

which the property is required and a concise statement of the facts showing the necessity of its acquisition for such use; also that the plaintiff has been unable to agree with the owner of the property for such purchase and the reason for such inability; also a statement that it is the intention of the plaintiff in good faith to complete the work or improvement for which the property is to be condemned and that all of the preliminary steps required by law have been taken to entitle him to institute the proceeding. These facts are essential as a basis for the institution of the proceeding. The defendant by his answer may deny any or all of these allegations, and if he does so it is proper that the issues thus raised and which go to the right of the plaintiff to maintain the proceeding at all should be tried before the labor and expense of the further proceeding before commissioners is incurred, and in our judgment it is such issues as these for trial of which provision is made by section 3360.

Section 3369, relating to the judgment to be entered after the preliminary trial, prescribes a judgment which is entirely appropriate to the determination of these underlying fundamental questions, but which would not be at all appropriate to a determination of an issue of ownership of the premises, such as has arisen in this proceeding. Said section provides, if the decision is "in favor of the defendant, the petition shall be dismissed   *   *   .*   If the decision is in favor of the plaintiff   *   *   * judgment shall be entered, adjudging that the condemnation of the real property described is necessary for the public use, and that the plaintiff is entitled to take and hold the property for the public use specified, upon making compensation therefor," etc. If upon the trial of a dispute between plaintiff and the defendant as to the ownership of the property the issue should be decided in favor of the plaintiff he would have no occasion to invoke the provisions which have just been quoted; and on the other hand if the dispute should be determined in favor of the defendant there is no reason why the proceeding should be dismissed. There would then be necessity for an appraisal and condemnation.

It is true that section 3378 provides for "Adverse and conflicting claimants to the money, or any part of it, to be paid as compensation for the property taken," but this provision both on its face and in the light of the practice under it relates to defendants who set up conflicting claims amongst themselves and does not relate to a contest between the plaintiff and defendants as to the title to the property.

Furthermore, we doubt the right of a petitioner under any such circumstances as have been developed here to make a condemnation proceeding at any stage the means of forcing trial before a referee or commissioners of a contested title with defendant. If the proceeding was instituted on the assumption and basis that the defendant has certain property rights to be condemned, the petitioner, having taken advantage of this assumption as a basis for his proceeding, would not be allowed therein to contest such rights. (*Village of Olean* v. *Steyner*, 135 N. Y. 341.)

On the other hand, such petitioner ought not to be allowed, by alleging in a defendant a lesser estate or title than he really possessed, to compel such owner to set up his true title and interest and thus contest in the proceeding questions of which he otherwise might be entitled to have a trial by jury.

This question was somewhat considered and involved in *Matter of City of Yonkers* (117 N. Y. 564). In that case the petitioner instituted condemnation proceedings to acquire an easement through property of one Lawrence for the purpose of constructing a sewer. The commissioners awarded him certain damages as the value of the easement to be taken in his land. The Special Term, on the opposition of owners of property to be assessed for the expenses incurred, refused to confirm the report on the ground that the city was already the owner of the easement which the proceedings on its part were taken to condemn. This view was affirmed by the General Term, and the question whether the city was in fact the owner of such easement was fully litigated. When the case reached this court, Judge PECKHAM, writing for it,

said : " These proceedings are entirely inappropriate for the purpose of trying the question of title to the property in controversy, or for testing the right of the city to an easement in the land for the purpose of building the sewer referred to herein. The city authorities have assumed, from the commencement, so far as the record shows, that the appellant was the owner of the land in question, and that it was the intention of the city, through these proceedings, to take from him a right or easement in the land for the purpose of the construction, maintenance and repair of this sewer. * * * Such a proceeding is not the proper one for the purpose of testing the title to the land which is proposed to be taken, as between the public body and the individual against whom the proceedings are commenced " (p. 572).

In *Matter of William and Anthony Streets* (19 Wend. 678), which was a proceeding relative to the laying out, etc., of streets in the city of New York, it was said by Judge BRONSON (p. 688) : " It is not, I think, the duty of the commissioners to pass upon conflicting claims of title, where they depend either upon strongly controverted facts, or difficult questions of law. Such matters should be settled by courts and juries."

But if the view is correct that it was not the purpose or meaning of section 3367 that the issue of title framed by the petition and answer should be sent to a referee for determination as was done, we do not think that it follows that the proceedings were void or the referee without jurisdiction to pass on the controversy thus submitted to him.

As we have already pointed out, various issues had been raised by the pleadings which at that point in the proceedings were properly the subject of such a reference as was made. In addition, this issue of title between appellant and respondent had been raised. The proceeding was pending in the Supreme Court with its general jurisdiction and in our judgment the parties had the right if they so desired to submit the latter issue in connection with the other ones to the determination of the referee, instead of seeking the decision of that question at some other time or within some other tri-

bunal. This was what they did. It was "Stipulated in open court that the issues raised by the pleadings (including the one in question) be referred." This was done and without any objection the parties have tried the question and a judg-ment was rendered which in our opinion was binding on them, so far as jurisdiction was concerned.

In *Chicago, S. F. & C. Ry. Co.* v. *Ward* (128 Ill. 349) the peti-tioner in condemnation proceedings in a preliminary manner tried out with an alleged owner the question of title to a piece of property and then on appeal argued that the court had no power thus to try a question of title. It was held in effect that the appellant was estopped from raising this question on appeal; that the parties had a right to waive a jury and to submit their case or any part of it to the court for decision. Of course the case at bar is even stronger than the one cited, for here no objection of lack of jurisdiction has been raised at any point.

Thus we are brought to the consideration of the other ques-tion, whether the decision of the referee that the respondent was the owner of the premises in question was vitiated by any such error that we should reverse the judgment founded thereon. The intelligent presentation and consideration of this question necessarily involves a further and somewhat tedious review of details.

The immediate basis of the appellant's claim that it is the owner of said premises subject to some possible easements in the respondent is the act of 1905 already referred to whereby the state granted its right in said lands to the appellant. But of course the validity and effectiveness of this grant depends on the right and title which the state itself had at that time. The contention of the appellant that the state did own these premises in whole or part is made to rest on the argument that they were originally part of the bed of a large navigable inland lake the title to which bed rested in the state, and that under the principles of law applicable to grants of such lands or territory as between the state and indi-viduals, conveyances which are relied upon by the respondent

as divesting the state of its title to such premises and placing the same in him did not in fact have that effect.

The character of Seneca lake as a large navigable body of water has already been referred to and is all that is claimed for it by the appellant.

Prior to 1786 the state of New York claimed to be the owner of territory including that lake. In that year, as is well known, disputes which had arisen between it and the state of Massachusetts growing out of conflicting grants and claims thereunder were submitted to the adjustment of commissioners. In the adjustment of the dispute Massachusetts ceded or granted to the state of New York all claim, right and title to the government, sovereignty and jurisdiction of certain lands and territory and the state of New York ceded and granted to the state of Massachusetts "the estate, right, title and property (the right and title of government, sovereignty and jurisdiction excepted) which the state of New York hath of, in and to 230,400 acres to be located,  *  *  * and also of, in and to all the lands and territories within the following limits and bounds," etc., and which territory and land concededly embraced that here in dispute.

It is urged in answer to the appellant's contention, that this cession or grant executed in settlement of a dispute was not subject to the principles of those decisions cited as holding that as between the state and an individual a conveyance by the former will not be deemed to include the bed of navigable waters unless expressly so stated, and further, that even if subject to such rigorous rules of construction, a conveyance which by express and definite metes and bounds includes the bed of navigable waters as did the one from New York to Massachusetts is sufficient to convey such bed. (*Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56, 71 ; *Rogers* v. *Jones*, 1 Wend. 237.) It is also urged that the construction claimed by respondent to the effect that the grant to Massachusetts did cover and include the bed of Seneca lake is expressly sustained by *Smith* v. *City of Rochester* (92 N. Y. 463, 476). relating to the bed of Hemlock lake, a smaller body

of navigable water.  (See, also, *Commrs. of Canal Fund* v. *Kempshall*, 26 Wend. 404, 420.)

We do not feel that we are compelled or even permitted to consider to any extent these conflicting arguments which thus center around this grant.  We think that certain findings of fact made by the referee and unanimously affirmed by the Appellate Division are conclusive upon us in this case in favor of the respondent's position that the state has become divested of title.

The referee has found the execution of a chain of conveyances extending from the state of Massachusetts to respondent and that the grantor in each intended to and by descriptions which we agree were sufficient for that purpose down to conveyances made in 1845, to which further reference will be made, did convey to his respective grantee the premises in question.  He has then further found in effect in the case of each conveyance that the grantee at the time of the conveyance took possession of the premises thus conveyed; also that since a date prior to 1800 the premises in question have been " continuously in possession of the said several grantors since the grants by Williamson aforesaid, each of the said grantees having taken possession of the same at the time of the conveyance to him, having occupied the same under claim of his said title, each of said grantees claiming to own as well the uplands thus conveyed (as) the land under water opposite the premises thus conveyed to and occupied by him eastwardly to the New Preemption Line, and each of the said grantees upon taking possession of the said property proceeded to improve the same by constructing docks and wharves thereon, filling out with earth and structures into the said lake and reclaiming the said land under water from time to time to a greater or less extent, each succeeding owner adding to the said lands thus reclaimed, filled out and extended, and each in turn putting structures thereon adding to the constructions already there, so that prior to 1845 sufficient land was reclaimed opposite the uplands of the premises described in the petition herein to to make a building site  *  *  *  the east line of which

extended out at least one hundred sixty feet beyond where the west water line of Seneca Lake was at the time of the original conveyances from said Williamson, and said land was further filled out so that in 1860 there was reclaimed from the waters of the lake, filled up and made dry twenty feet or more of land beyond the east line of said furnace; docks and wharves were constructed of more or less substantial kind still further out, and the process of filling has gone on until at the time of the commencement of this proceeding all of the lands described in the petition herein were completely filled up, reclaimed from water and made dry land."

He has also found the conveyance by the state of New York to Massachusetts by the treaty of cession of a large tract of land, including within its boundaries the lands in question and "That by said conveyances it was the intention of the State of New York to convey and it did convey to the State of Massachusetts both uplands and lands under the water within the described boundaries, including lands under the water of Seneca Lake from the western shores thereof eastwardly to the New Preemption Line so called (and which included these premises);" also, "That since 1786 the State of New York has not been the owner of nor in possession of any of the lands or premises described in the petition herein; has never acquired the same, taken possession of or made any use of the same as owner. That said lands described in the petition herein are no part of the canal lands of the State of New York and never were."

Whatever might be our original and independent opinion as to the effectiveness of the cession from New York to Massachusetts as a conveyance of the bed of Seneca lake we see no escape under the findings from the decision that before its attempted grant to the appellant the state had become divested of any proprietary ownership of the premises in question, this, of course, not affecting such jurisdiction and sovereignty as it exercised over the waters of the lake for the benefit of the public. (See *Langdon* v. *Mayor, etc., of N. Y.,* 93 N. Y. 129, 144.)

But the appellant contends that the respondent has not acquired title in fee to all of the premises of which condemnation is sought even though the state has lost the same, and we think that it is correct in this contention; that as now appears he has acquired title to only part thereof.

The chain of conveyances through which the respondent claims title and ownership has already been referred to. It appears by these that in the earliest conveyances the state of Massachusetts, from the territory ceded to it, conveyed premises by definite boundaries beyond doubt including in terms those in question to individual grantees, who in turn passed the title along. After a while the parties to various conveyances adopted a form of description which, so far as applicable to the premises in question, bounded those conveyed "by Seneca Lake," or described them as extending "to Seneca Lake," the referee finding in effect that it was the intention by each of the conveyances in which either of these forms of expression was used, to convey to the grantee all of the lands under water opposite the uplands of the premises in question, so far as the same were covered by the original cession of the same from New York to Massachusetts; also that the various grantees entered upon and took possession of said premises, improved them, extended them into the lake, etc., and we shall assume simply for the purposes of this discussion that under such forms of conveyance the final grantees, prior to 1845, had acquired title to all of the premises here involved.

Thereafter, however, a different and third form of conveyance was adopted, which, as we think, resulted in a break in the title to part of the premises now claimed by respondent. By these conveyances, prior to 1855, there was lodged in one Johnson, as his only paper title to part of the premises in question, one in which the lands conveyed were described on that particular course by lines running "to Seneca Lake, and thence southerly on the shore of said lake,  *  *  *  together with all docks, buildings and fixtures, rights and privileges which now belong or appertain to the said parties of the first part or to the premises above conveyed in said lake adjoining

the premises above conveyed." In 1855 by a referee under a judgment of the Supreme Court the interest of Johnson in said premises was conveyed to Godfrey and Fellows by a description of which the lines in part ran as follows : " Thence easterly on the said line (already described) to a dock on the shore of Seneca Lake at which point an iron pin three-quarters of an inch in diameter is driven into the timber of the dock ; thence southerly along the shore of said lake to the north line of said lot lately owned by John D. Dox, * * * together with all the docks, buildings, fixtures, rights and privileges which now belong or appertain to the said party of the first part or to the premises herein described in said lake adjoining the same." Title to the premises thus conveyed by descent and by conveyances found by the referee either to have employed the same description as that last mentioned or to have covered the grantor's interest in the same premises conveyed to Godfrey and Fellows, finally lodged in one Jessup in 1889, who in the same year conveyed the same to one Wellington, describing them as being the property conveyed to Godfrey and Fellows in 1855, but nevertheless stating that " the land conveyed is at the date hereof * * * bounded * * * on the east by Seneca Lake." Wellington conveyed in 1890 to Thomas Henson by the same description and the latter in 1891 conveyed to the respondent Henson.

The exact location of the shore and of the dock and of the iron pin referred to in the descriptions just quoted is not made clear by the findings, but we understand it to be undisputed that said point and shore were considerably inside of the present shore line of the premises sought to be condemned as represented or made by the new towpath.

Taking up first the specific description of lands conveyed by the boundaries as contained in the Godfrey and Fellows and subsequent conveyances, the law is clear that even in the case of a small non-navigable river or body of water boundary lines running to a fixed point on the shore thereof and thence along said shore do not carry title to the middle of the stream

or body of water but only to the shore, and this rule might apply even more strongly to such a body of water as Seneca lake.

In *Child* v. *Starr* (4 Hill, 369) a conveyance of land on the banks of Genesee river employed a description running " eastwardly to the Genesee River; thence northwardly along the shore of said River to Buffalo Street," and it was held that no part of the bed of the river passed under the conveyance and that the grantee took only to low-water mark. Chancellor WALWORTH wrote : " Running to a monument standing on the bank, and from thence running by the river or along the river, etc., does not restrict the grant to the bank of the stream ; for the monuments in such cases are only referred to as giving the directions of the lines to the river, and not as restricting the boundary on the river. If the grantor, however, after giving the line to the river, bounds his land by the bank of the river, or describes the line as running along the bank of the river, or bounds it upon the margin of the river, he shows that he does not consider the whole alveus of the stream a mere mathematical line, so as to carry his grant to the middle of the river. And it appears to me equally clear that the grant is restricted where it is bounded by the shore of the river, as in the present case." (p. 375.)

In *Starr* v. *Child* (5 Denio, 599) the deed under consideration covered premises on the banks of Genesee river and then " bounded the grantee along the shore of the river," and it was held that this excluded the bed of the river and limited the boundary to low-water mark. This doctrine has been affirmed by, amongst other cases, those of *Halsey* v. *McCormick* (13 N. Y. 296); *Gouverneur* v. *National Ice Co.* (134 N. Y. 355).

But there remains to be considered how much the grant defined by the specific boundaries of the shore was enlarged by the general clause covering docks, buildings, fixtures and rights and privileges in the adjoining lake "belonging or appertaining" to the grantor or the specifically described premises.

Without attempting on the evidence as now presented to

define the exact extent of the rights surviving under present conditions which may have been covered and conveyed by this clause, we feel sure that it did not describe and convey the title in fee to all of the bed of the lake assumed to have been included in the terms of the early conveyances in respondent's chain of title.

It has been held that a grant of a wharf included the adjoining flat lands. (*Ashby* v. *Eastern R. R. Co.*, 5 Metc. 368; *Doane* v. *Broad Street Assn.*, 6 Mass. 332.) But those cases in the surrounding facts and in the terms of description in our opinion are distinguishable from the present one. The principle is familiar that land does not pass as an appurtenance to land. The entire clause which we are considering taken in connection with the conveyance of the uplands by definite shore boundaries may perhaps be construed as sufficient to include not only any docks and buildings extending beyond such boundaries, but also the fee of the land on which they stood, and also as conveying any rights or easements in the lake and over the bed thereof belonging to the grantor incident or necessary to the enjoyment of such uplands. The grant should not be construed as transferring the fee to the bed of the lake beyond this. (*Ammidown* v. *Granite Bank*, 90 Mass. 285; *Voorhees* v. *Burchard*, 55 N. Y. 98; *Ogden* v. *Jennings*, 62 N. Y. 526.)

It is true that the referee found in the case of each conveyance including those whose boundaries have just been considered "that each of said grantors  *  *  *  intended to convey and did convey the uplands described and also all the land under the water of Seneca Lake adjoining as is included between the north and south lines of the parcel described projected out eastwardly to the new preemption line." If the terms of description in the conveyances referred to were ambiguous or inconsistent, this finding might remedy the apparent defect in respondent's title. But it is well settled that, when the terms of a deed or other instrument in writing are perfectly plain and unambiguous, their meaning and effect cannot be changed or overturned by the unexpressed intention

of the parties. (*Muldoon* v. *Deline*, 135 N. Y. 150; *N. Y. Life Ins. & Trust Co.* v. *Hoyt*, 161 N. Y 1, 9.)

The referee has also made findings of various facts tending to establish title by adverse possession to some of the premises consisting of land made by filling in the lake from time to time. It is possible that the respondent, on another trial, may be able to establish such title to made land lying outside of the boundaries of the Godfrey and Fellows deed. The present findings are not sufficient for that purpose for various reasons. They are based on the theory that respondent had acquired the paper title thereto by conveyances which we have held did not accomplish that purpose, and they make it quite apparent that some of the filling in has been made and the actual occupation commenced within less than twenty years.

These views lead us to the conclusion that the judgment appealed from was erroneous in so far as it determined that the respondent was the owner and in possession of all of the premises of which condemnation is sought.

We think the judgment appealed from was erroneous in another respect. Even if it had correctly determined that respondent was the owner of the premises, we see no reason why the condemnation proceedings should be dismissed. We judge that the parties had a preliminary trial of this very issue of title in order that the proceedings before the commissioners might be simplified, and there is no reason why the appellant should not have been allowed to continue the proceeding for the purpose of acquiring all the respondent's title, whether it was the ownership in fee or not, even if it should have been found necessary to amend some of the allegations of the petition.

The judgment appealed from should be reversed, without costs, and the matter be remitted to the Supreme Court for such further proceedings as may be proper in accordance with this opinion.

Cullen, Ch. J., Gray, Edward T. Bartlett, Werner, Willard Bartlett and Chase, JJ., concur.

Judgment reversed, etc.