### In re CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department.   December 29, 1911.)

1. EMINENT DOMAIN (§ 58*)—PARKS—CONDEMNATION OF LAND—LANDS UNDER WATER.

Laws 1909, c. 142, authorizing the city of Buffalo to acquire for park purposes certain lands in the city bordering on Lake Erie within certain boundaries, as shown by the specified survey, vested in the city plenary power to take in fee all the lands within the designated boundaries, including riparian rights and lands under water.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 147–160; Dec. Dig. § 58.*]

2. MUNICIPAL CORPORATIONS (§ 293*)—CONDEMNATION OF LAND FOR PARKS—PROCEDURE—NOTICE OF INTENTION—ADOPTION.

Laws 1909, c. 142, authorized Buffalo to acquire certain lands for park purposes, in accordance with the procedure provided by its charter.   Buffalo City Charter (Laws 1891, c. 105) § 418, provides that, when it is intended to take land for public purposes, the "board of aldermen" shall require the board of assessors to ascertain and certify the district benefited, and the "common council" shall not adopt any resolution declaring its intention to take such lands until the report of the assessors has been received and confirmed, when the "council" shall declare its intent, describe the lands, and provide how the funds required shall be raised; provision being then made for publishing the resolution.   A proceeding to condemn lands for park purposes was begun by a resolution of the board of aldermen directed to the board of assessors to ascertain and certify the district to be assessed and benefited by acquisition of the lands in fee for park purposes, the description of the lands contained in the act of 1909 being embodied in the resolution, except the clause of section 1 providing that nothing contained in the act should affect any right or estate of the state in and to any of the lands or premises described.   Two days after the adoption of the resolution by the board of aldermen, it was confirmed by the board of councilmen, after which the report of the board of assessors was presented by the board, confirmed by that body, and was concurred in by the board of councilmen, and the whole approved by the mayor, and on the same day it was proven that the board of aldermen confirmed the report of the board of assessors in adopting the resolution declaring its intention to take the lands, which was also concurred in by the board of councilmen.   Held, that the procedure constituted a substantial compliance with the law, and was not invalidated because the resolution of intention was not made by the "common council," as prescribed by Charter, § 418.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 773–775; Dec. Dig. § 293.*]

3. MUNICIPAL CORPORATIONS (§ 85*)—LEGISLATIVE AUTHORITY—LEGISLATIVE BODIES.

Under Buffalo City Charter (Laws 1891, c. 105) § 4, providing that the common council of the city shall consist of the board of aldermen and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the board of councilmen, such bodies are not required to act on matters which must pass the common council in joint session of the two branches, but matters originating in the board of aldermen should be approved or amended by the board of councilmen and vice versa, the separate action of the two bodies alone being essential, and, when made, constitutes the enactment of the council.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 188; Dec. Dig. § 85.*]

4. EMINENT DOMAIN (§ 234*)—PARKS—CONDEMNATION OF LAND—PROCEEDINGS —DESCRIPTION.

Laws 1909, c. 142, authorized the condemnation of a certain lake front in the city of Buffalo for park purposes, and provided in section 1 that nothing therein contained should affect the state's right of title to any lands or premises contained in the description to be condemned and so used. The notice of intention adopted by the common council did not contain the excepting clause of the act of 1909, and the report of the commissioners did not include the property owned by the state, assigning as a reason therefor that, in fixing the value of the property, the commissioners did not include the entire property sought to be taken, for the reason that in their opinion the title to some pieces which were under water within the description of the property sought to be condemned was in the state of New York, and the order confirming the report of the commissioners after describing the premises to be taken and designating them as shown on a specified map forming a part of the report, excepting therefrom all parcels, the titles in fee to which are hereby determined to be in the state of New York. *Held* that, in the absence of a claim that the commissioners did not include in their report the ascertainment of compensation for all the lands which could be taken by the city in pursuance of the act, the proceedings were not invalidated because there was a variance between the lands described in the act, and thus described in the commissioner's report, and in the order of confirmation and in the notice of intention.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 592–600; Dec. Dig. § 234.*]

5. EMINENT DOMAIN (§ 233*)—COMPENSATION—JURISDICTION OF COMMISSIONERS—TITLE—TRIAL—CONSENT.

Where, in proceedings by the city of Buffalo to condemn land for park purposes, commissioners were appointed to ascertain the largest compensation to be paid to parties owning or interested in the lands to be taken, as authorized by the city charter, and early in the hearings before the commissioners it developed that the determination of title to certain of the lands, as affected by erosion or the constant recession of the shore line of a lake, was necessary, and it was assumed by all parties before the commissioners that the determination of such claims by them was essential, in order to fix the compensation to be awarded to each owner, and no prior determination by a proper tribunal before the hearings by the commissioners were closed was suggested, defendants, having joined in consenting that such question be determined by the commissioners, could not thereafter object that they had no jurisdiction thereof

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 233.*]

Appeal from Equity Term, Erie County.

Application by the City of Buffalo to acquire in fee lands and premises along the water front, between Georgia and Jersey streets, for park purposes. From the report of commissioners appointed by the Special Term to ascertain compensation to be allowed to owners, they appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Eugene Cary, for appellants Bowen and others.

De Witt Clinton, for appellants Winship and others.

Alfred L. Becker, for appellants New York Central & Hudson River R. Co. and Central Dock & Terminal Ry. Co.

William B. Frye, for respondent City of Buffalo.

Henry W. Hill, for respondents Kirkover and others.

Charles M. Harrington, for respondents Schoelkoph trustees.

Philip A. Laing, for respondent Sigel Real Estate & Investment Co.

Charles Diebold, Jr., for respondent Shannon.

Roland Crangle, for respondents Steffan heirs.

SPRING, J. [1] By chapter 142, Laws 1909, the city of Buffalo was authorized to acquire for park purposes, in accordance with the procedure for the acquisition of lands provided in its charter (chapter 105, Laws 1891), the lands in the city bordering on Lake Erie and bounded easterly by the westerly blue line of the Erie Canal, on the south by the northerly line of Georgia street, on the north by the southerly line of Jersey street, and westerly by the shore line of the lake, "as shown by a survey and map of the South Village of Black Rock filed in the office of the Secretary of State," and which map was made in 1816 by Lemuel Foster. The act vested in the city plenary power to take in fee all the lands within the designated boundaries, including riparian rights and lands under water.

The lands comprised a strip about 4,000 feet in length, with an area of 75 acres, and was part of the mile strip originally reaching from Buffalo river to Lake Ontario. The right of way of the Falls Branch of the New York Central Railroad Company occupied a strip of this tract, 100 feet in width, its entire length, and this 100-foot strip was excepted by specific description in the enabling act referred to from the authority of the city to take. This entire tract of land at one time belonged to the state of New York, but it had from time to time given deeds to grantees of lots until the tract comprised over 70 distinct parcels, aside from the title to that which still remains in the state. At the close of section 1 of the act is found this clause:

"Nothing herein contained shall affect any estate, right, title or interest which the people of the state of New York have in and to any of the lands and premises above described."

This proceeding was commenced in the spring of 1909, and commissioners were appointed by the Special Term of this court to ascertain the compensation to be paid to the several owners whose lands were to be acquired by the city. The value of the entire property to be taken was placed by the commissioners at $944,740. They viewed the premises, received a large volume of evidence as to the ownership of the various claimants, and of the value of the several lots sought to be condemned. No appeal has been taken by the city, so it was evidently satisfied with the awards made.

The commissioners made an elaborate report in which are considered with great care the questions of fact, and also, with much learning, the legal propositions involved, so that we do not deem it essential to discuss anew the questions of fact or of law to which they have given such painstaking and satisfactory attention. Several reasons are assigned by the appellants for the reversal of the order which were not before the commissioners, and these we will consider.

[2] First. It is contended that the proceeding is illegal ab initio for the reason "that the common council of the city did not adopt the notice of intention after the report of the assessors had been confirmed, as required by the charter," in the language of the counsel for the New York Central Railroad Company.

Section 417 of the city charter vests the city with the power to take lands for public parks and other enumerated public purposes. Section 418 is as follows:

"When it shall be intended to take any lands for any of said purposes or objects, the board of aldermen shall require the board of assessors to ascertain and certify the district that will be benefited thereby and will be assessed therefor, and the common council shall not adopt any resolution declaring its intention to take such lands until the report of the assessors has been received and confirmed. The common council shall thereupon, by resolution, declare such intent, and describe the lands intended to be taken, and shall at the same time declare whether the expense of the same shall be paid by general or local fund, or in part by a local fund. and if wholly or partly by a local fund, define the district that will be assessed therefor."

Provision is then made for the publication of the resolution. The proceeding was set in motion April 12, 1909, by a resolution of the board of aldermen directed to the board of assessors to ascertain and certify the district to be assessed and benefited by the acquisition of the lands in fee for park purposes, and the description of the lands contained in chapter 142, Laws 1909, referred to, was embodied in the resolution, except the clause above mentioned; and on the 14th day of April the action of the board of aldermen in adopting this resolution was concurred in by the board of councilmen. On the 19th day of April the written report of the board of assessors was presented to the board of aldermen and confirmed by that body, and its action was concurred in by the board of councilmen and approved by the mayor on the 30th of the same month. On the same day that the board of aldermen confirmed the report of the board of assessors it adopted a resolution declaring its intention to take the lands described for the purpose contemplated, which was concurred in by the board of councilmen.

The point made is that this resolution of intention should have been made by the common council, as prescribed in section 418 of the charter. I think there was a reasonable compliance with the procedure defined. The board of aldermen required the assessors to certify, etc., and their report was transmitted to the board of aldermen, who both confirmed it and passed the resolution of declaration of its intention. This may have been unnecessary, and possibly the formal resolution should have been the product of the board of councilmen. That body, however, by concurring in the resolution adopted it, and it had the same force and effect as if it had originated in and been adopted by

the board of councilmen. On the 1st of June, 1909, the board of alder-men adopted a resolution that the city "has determined * * * and does hereby determine, to take and appropriate the lands and premises in fee simple for park purposes," describing the area to be acquired; and on the 3d of that month the board of councilmen concurred in the adoption of this resolution which was subsequently approved by the mayor. The mode of procedure seems to have been consistent through-out. The board of aldermen took the initiative and confirmed the re-port of the assessors, and kept hold of the matter by adopting the necessary resolutions, but each of them was formally concurred in by the board of councilmen.

[3] The common council is the legislative body of the city, consisting of the board of aldermen and the board of councilmen. Section 4 of the charter. The body is not required to act in joint session of the two branches composing it. The plan is that matters originate in the board of aldermen and must be approved by the board of councilmen. The latter body may amend any measure submitted to it and return the same to the board of aldermen. "If the board of aldermen agree to such amendment, its action as amended shall be the action of the com-mon council." The separate action of the two bodies alone is essential, and, when made, constitutes the enactment of the common council. In further illustration of this severability of authority, section 5 concludes as follows:

"Whenever by law, the giving of notice, reference to any committee or any officer or person, or other act is made a prerequisite to action by the com-mon council, it shall be necessary for such notice to be given, reference to be made or other act to be done, by the board of aldermen only, unless here-in otherwise specifically provided."

[4] Second. It is urged that the proceeding is invalid because the lands described in the act, the report of the commissioners, the order of confirmation, and in the notice of intention are not identical. To state the proposition concretely, the notice of intention adopted by the common council does not contain the clause in the act that the lands owned by the people of the state are not to be affected by its provi-sions. The report of the commissioners does not include the property owned by the state, assigning the following reason therefor:

"In fixing the value of the property the commissioners do not include the entire property sought to be taken by the city, for the reason that in the opinion of the commissioners the title to some pieces under water, within the description of the property sought to be condemned, is in the state of New York."

The order confirming the report of the commissioners, after the de-scription of the premises to be taken and designating them as shown on Map X, forming a part of their report, adds:

"Excepting therefrom all parcels, the title and fee to which are hereby determined to be in the state of New York."

There is no claim made that the commissioners did not include in their report the ascertainment of compensation to all the lands which could be taken by the city in pursuance of the act. The lands owned

by the state were especially exempted from its operation. Their inclusion or exclusion by description or otherwise could be of no importance in view of the explicit exception in the act. The counsel cites authorities (People ex rel. Township Board of Springville, 12 Mich. 434, City of Cincinnati v. Cincinnati & Spring Grove Av. Co., 26 Ohio St. 345, and Commissioners, etc., v. Judges of Chenango, 25 Wend. 453, among them), in each of which a proceeding was commenced to lay out a highway specifically described and to which the requisite freeholders had assented, and a part of the highway was laid out and then abandoned, and the court held in effect that the highway described must be laid out. In one case (12 Mich. 434) the commissioners appointed to lay out the highway chose to lay out only a part of it; and in another (25 Wend. 453) an appeal had been taken from the determination of the commissioners of highways to three judges, who affirmed as to part of the highway and reversed as to the residue. The court held that the judges could only "lay out the road so applied for"; that being the route proposed by the freeholders. Here we have a substantial adherence in the order to the language of the statute, and the omission to recite the exception in the report of the commissioners and the notice of intention. The variance is of no importance in view of the exemption in the act which was the foundation of whatever action was taken.

[5] Third. It is claimed that the commissioners exceeded their authority in determining questions of title in their report; and the objection might be effective except for the course taken at the hearing before the commissioners with the assent of all the parties. The order directed the commissioners "to ascertain the just compensation" to be made to the parties owning or interested in the lands to be taken, and this order was in conformity with the city charter provisions in the sections in title 20, entitled "Of Eminent Domain" (sections 421, 424, 426, 430–436), which practice corresponds to that prescribed in the condemnation law (Code Civ. Proc. § 3357 et seq., and section 3369). Early in the hearings before the commissioners it developed that the question of the effect of the constant recession of the shore line by the attrition of the waters of the lake with the contiguous lands and beach would be an important one in determining the rights and titles of the parties who were lined up against each other as conflicting owners. Mr. Clinton, the chairman of the commissioners, observing this, brought up the subject in this wise:

"Let me ask how far you gentlemen propose to go on this question of erosion with your evidence. The question of erosion involves sometimes quite extensive proof in view of rules of law governing loss of title by erosion."

Thereupon an extended discussion ensued, relating chiefly to the order of proof to be pursued, all apparently assuming that the determination of these conflicting claims by the commissioners was essential in order to fix the compensation to be awarded to each owner whose land was to be taken. The determination of this matter of title by the proper tribunal before the hearings by the commissioners, or the ascertainment of the value of each parcel, irrespective of its ownership, was not suggested; but the submission of both questions

to the commissioners was not only acquiesced in, but was made the text of the discussions. The hearings continued for nearly a year after this adjustment of the order of proof, and the major part of the proof was only pertinent as bearing upon the titles of the differing owners, and no objection was offered to any of this proof calling in question the power of the commissioners to determine the subject-matter of the disputed ownership.

The appellants are too late in raising the question that the commissioners transcended the authority vested in them in deciding all the conflicting claims of title. They joined in endowing the tribunal with distinct authority to determine these claims. They cannot now disown their own offspring. It is not a matter of jurisdiction in the usual meaning of that term. The Supreme Court did possess the power to pass upon the varying titles, but did not transmit it to the commissioners. The parties elected to do that, and they constituted the tribunal to that extent. City of Geneva v. Henson, 195 N. Y. 447, 456 et seq., 88 N. E. 1104; People ex rel. Brewster v. Old Guard, 87 App. Div. 478, 484 et seq., 84 N. Y. Supp. 766.

Fourth. The claim of the New York Central Railroad Company that it is a littoral owner by virtue of its right of way to the exclusion of the owners of the uplands was denied by the commissioners; and the authorities cited in their satisfactory presentation of the subject-matter of this claim sustain their position, and no further discussion of it seems to be required.

Fifth. The individual appellants claim that their predecessors in title acquired tracts of land from the state many years ago which are now under water, and the title to these parcels is now vested in their respective claimants. The question of fact passed upon by the commissioners was whether the disappearance of this land by the pushing back of the shore line was due to the gradual, constant encroaching of the waters of the lake eating away, eroding the beach, or whether it was attributable to the sudden action of the water, or the removal of the sand on the beach by human agencies. The subject was a somewhat difficult one, and not susceptible of accurate demonstration either way, but the commissioners held that the recession of the shore line was in consequence of the gradual encroachment of the waters of the lake which submerged the contiguous lands of the owners many years ago; and this matter is treated in the report under the head of "Erosion," and the evidence sustains the conclusions reached.

The report and order should be affirmed.

Order and report affirmed, with costs and disbursements to each respondent appearing on a separate brief against the appellants, to be adjusted before Justice SPRING on two days' notice. All concur.