## HALSEY *against* McCORMICK.

Where in a deed the land is described as extending to *the bank of a creek*, the grantee does not take title to its centre; nor is he limited to the bank at high water mark.

Such a description includes the land to the margin of the stream at low water.

The rule which prevails as to grants bounded on the shore or bank of the sea or navigable rivers, is not applicable to streams not navigable.

APPEAL by the plaintiff from a judgment of the supreme court sitting in the 6th district. The facts out of which the questions decided by this court arose, are sufficiently stated in the opinion. The case was submitted on printed briefs.

*Ferris & Cushing*, for the appellant.

*W. V. Bruyn*, for the respondent.

DENIO, J. The only question in this case is as to the location of the southerly boundary line of the plaintiff's lot. The conveyance, from the source of title under which the plaintiff claims the premises in controversy, describes the land conveyed, as follows: "A lot of land fronting the south side of the turnpike road running easterly by Bennett's mills, and joining the east line of lands belonging to the heirs *of Richard W. Pelton, deceased, being five rods east [*297 and west in width, and running south from said road *to the bank of the six mile creek.*" The defendant is in possession of a piece of land in the bed of the creek, or what was formerly the bed of the creek, and it is a part of this land which the plaintiff seeks to recover in this action. The plaintiff, on the trial, claimed that his deed conveyed the land to the centre of the creek, but the judge charged that the bank of the creek was the boundary, and the plaintiff excepted.

There was a controversy as to where the bank of the creek was, and the judge charged " it was that line to which the water would flow when it was ordinary high water in spring and fall." To this the plaintiff excepted. There was evidence tending to show that the channel had changed since the deed above mentioned was executed, and upon that feature of the case the court charged, that if the creek had so receded imperceptibly by natural causes, then the plaintiff's land would follow the creek ; but if it had been caused to recede by artificial means, then the plaintiff's land would not follow it." The plaintiff excepted to this instruction. The defendant had a verdict, and the question before us is, whether these several instructions were correct.

(1.) Did the deed carry the plaintiff to the centre of the creek, or only to the bank ? This question is well settled against the plaintiff by several adjudged cases. The last of these is *Starr* v. *Child*, in the late court of errors (5 *Denio*, 599), and the others will be found referred to in the opinions of the judges in that case. The plaintiff's land is bounded by the bank of the creek, and does not extend any further.

(2.) I am of opinion that the deed carried the plaintiff to low instead of high water mark. It would be unreasonable to intend that by the description in that conveyance the parties contemplated that there should be a strip of land between the plaintiff's southern boundary and the water. If we adopt the ruling at the trial, the plaintiff, who may *be presumed to have purchased with a view to such use of the stream as might ordinarily be had by the owner of land on one side of it, would be excluded from all use of the water except during the spring and fall months; and thus when he would be most likely to need it for the purpose of watering his cattle, or the like, he would be deprived of all benefit from its use. The judge was probably misled by what is laid down in the books respecting the shores of

·navigable waters, that is, of the sea and its arms, and rivers in which the tide ebbs and flows. In respect to this subject the rule is as it was laid down at the circuit. (3 *Kent Com.*, 431. 432.) This depends, however, upon a reason quite inapplicable to fresh water rivers. All the citizens of the state have a right to resort to the sea for the purposes of fishing, and the like, and therefore the space between high and low water mark is held to be the property of the public, like a common highway ; and even a grant from the sovereign will not be construed to include this space unless it is clearly and indisputably so expressed. (*Storer* v. *Freeman*, 6 *Mass.*, 438 ; *Cortelyou* v. *Van Brundt*, 2 *Johns.*, 357 ; *Kean* v. *Stetson*, 5 *Pick.*, 492.) Fresh water rivers, and especially small streams actually incapable of being navigated are private to the same extent as other real estate. Should it be held that the soil between high and low water mark did not pass by a grant, in the terms made use of in this case, the public would still have no right to resort to the stream by means of this space, and the grantee, having no greater rights than any other individual, would be liable to be prosecuted for a trespass should he resort to the stream in low or ordinary water for the most necessary purpose. So far as I can find any authority on the question, it is in accordance with the views which I entertain. Chancellor Walworth, in *Child* v. *Starr* (4 *Hill*, 373), said that a grant which was bounded by the shore of a fresh water river conveyed the land to the water's edge *at low water;* that the term shore, when applied to such a river, meant the river's *banks above low water mark, or rather those portions of the banks of the river which touch the margi [\*299 edge of the water of the stream. In *Handley's Lessee* v. *Anthony* (5 *Wheat.*, 374), the same rule was applied to a grant by one of the states of the Union to another state. The contrary rule laid down on the trial of this cause would lead to such inconvenient, not to say absurd, consequences, that I feel quite satisfied that it ought not to be sustained ; I am

Halsey *against* McCormick.

therefore, in favor of reversing this judgment for the mis-direction in this respect.

(3.) The rule given to the jury in reference to the changing of the channel of the stream was as favorable, at least, as the plaintiff was entitled to. To hold that a change in the channel, by artificial means, would extend the boundaries of the plaintiff's lot, would be as unreasonable as to decide that the removal of the landmarks by which the boundaries of a man's farm were defined, would expand or contract its area. The plaintiff has no reason to complain of the ruling in this particular; but on account of the error just mentioned, he is entitled to another trial. Judgment reversed and new trial ordered.

Judgment accordingly.