Grover, J,
The Mohawk and Hudson Railroad Company was authorized by its charter to acquire, by purchase, such real estate as was necessary for the construction and operation of its railroad. The lands embraced in the deed from Campbell to it will be presumed to have been acquired for this purpose. (Chautauqua County Bank v. Risley, 19 N. Y., 370; see 380.) The company acquired title in fee under that deed. When the land was no longer necessary for the purposes of the corporation it had a right to sell and convey the same. The plaintiff deduced a regular title to the lands embraced in his deed from the Hew York Central Railroad Company from the Mohawk and Hudson Railroad Company; and as the lands in dispute are clearly covered by the former deed, he showed a paper title from Campbell to himself of those lands if included in his deed from the Hew York Central. Campbell was shown to be the common source of title; the defendants claiming the land under a lease from him, made subsequent to his grant to the Mohawk and Hudson Railroad Com *531 pany. This showed the paper title in the plaintiff to the land claimed, if covered by his deed from the New York Central Company. The land in dispute is a strip upon the westerly side of Mill creek. The plaintiff has recovered only to low-water mark upon that side. He has not appealed from the judgment; hence, it is not material to determine whether his deed gives him title to the center of the creek, which was clearly so under the deed from Campbell to the Mohawk and Hudson Railroad Company. The Central Company having title to the center of the creek, gave a deed to the plaintiff describing the land, first, as beginning at a point on the west bank of Mill creek, thence following said west bank in a general course, etc. This embraces all the land to the margin of the creek at low-water mark. (Halsey v. McCormick, 13 N. Y., 296; Child v. Starr, 4 Hill, 373.) We have seen that it is not necessary to determine whether by the further and more general description of the land intended to be conveyed, declaring it bounded on the east by the creek, does not include all to the center of the same.
The counsel for the appellants insists that inasmuch as a survey of the lands embraced in the plaintiff’s deed, according to the courses and distances specified in the deed, would not carry him to the creek, such survey should control, and that his line must be located in accordance therewith. But it is well settled that that which is most certain must control and what is less certain must yield; courses and distances must yield to monuments upon the premises, either natural or artificial. (Jackson v. Loomis, 19 J. R., 449; Jackson v. Moore, 6 Cowen, 717.) The creek is a natural monument, and must prevail over the distances specified in the deed. The jury found that there had been no practical location of the line. This put an end to that question.
The counsel of the appellants excepted to the refusal of the judge to submit to the jury the question whether the lands in dispute had not been held and possessed by the defendants and those under whom they claim, adversely to the title of the plaintiff, for twenty years prior to the com *532 mencement of the action. The Code (§ 81) provides that the occupation of the premises shall be presumed to have been in subordination to the legal title unless the contrary appears. The evidence shows that all the occupation there had been of the strip between the fence on the west side and the creek had been by Campbell, and his lessees, for portions of the time. Campbell had granted the premises to the Mohawk and Hudson Railroad Company, and never thereafter had any paper or other title, unless acquired by adverse possession. The premises had not been cultivated or improved by Campbell or his lessees; they had not surrounded it by any permanent inclosure; the railroad company erected a fence on the west side of the creek, not as a line fence, but because it could be conveniently built there for the purpose of keeping animals from coming across the creek upon their lands. The fact that Campbell or his lessees had a fence a part of the time across the creek, connecting with this, to protect his land on the east side from animals passing up and down the creek, had no tendency to show an adverse possession; nor did the fact that their cattle and horses sometimes crossed the creek and trespassed upon the strip between the fence and the creek have any such tendency. That Campbell sometimes said the fence on the west side of the creek was upon his line, did not amount to anything. To constitute an adverse possession, the possession must be open, notorious, and under a claim of title adverse to that of the true owner, such as that he may be aware of the claim made. There was nothing of the kind in the present case. The evidence offered and rejected would not, in connection with the other evidence, have shown a practical location of the line or an adverse possession.
The judgment appealed from must be affirmed, with costs.
All concur.
Judgment affirmed.