W. EDWARD HUNTER, Plaintiff, *v.* FRED L. VAN KEUREN, Defendant.

Supreme Court, Steuben County, September 16, 1927.

Deeds — description — lots on lake had been mapped and sold bordering on roadway laid out by plaintiff in rear of lots — defendant bought lot with that knowledge — particular description must be governed by monuments — evidence shows that distances specified did not extend lot into road — defendant not entitled to have deed reformed to convey lot seventy feet wide instead of lot fifty feet wide.

The plaintiff, who owned a farm bordering on Keuka lake, subdivided and mapped a portion of the farm into building lots in 1904. The lots so mapped bordered the lake and in the rear thereof the plaintiff opened a roadway for the use of the lots. Many of the lots were sold, some by lot numbers and others by boundary descriptions. The defendant, when he purchased his lot, knew of the existence of the roadway but contends that his lot extends across the roadway and has commenced the erection of a building upon the roadway. The exact distances specified in defendant's deed, if they conflict with the monuments of description, must give way and the monuments will control, especially in view of the fact that the defendant knew that the lot in question ran back from the lake only to the boundary of the roadway, and in view of the fact that he accepted the deed and entered into possession of the property in full recognition that the rear boundary line was coincident with the boundary line of the roadway.

The contention by the defendant that the evidence shows that the point of beginning of the description was an elm tree standing some distance from the shore of the lake and that measuring from that tree 125 feet his deed conveyed to him the part of the roadway in question, is not supported by the evidence which shows that the tree referred to by the plaintiff was the remains of an elm tree that stood at the shore line of the lake and not the tree which stood some distance back therefrom.

The defendant cannot have the deed reformed so as to convey a lot seventy feet wide in the rear on the theory that the plaintiff agreed to convey a lot of that width, for it appears that the contract of sale described a lot fifty feet wide, and that the deed which was subsequently delivered to the defendant contained a similar description. The defendant cannot now claim that there was a mistake in the description, not having protested for many years after the deed was accepted.

ACTION in ejectment in which, subsequent to the trial and before final submission, plaintiff Edward H. Newman died, and W. Edward Hunter, as executor of the estate of Edward H. Newman, deceased, was substituted as party plaintiff in the action.

*Cole & Knapp* and *Wilbur F. Knapp,* for the plaintiff.

*Sebring & King* and *George A. King,* for the defendant

RIPPEY, J. On April 14, 1899, Edward H. Newman became the owner in fee of a farm located on the easterly side of Lake Keuka

and bordering upon the waters of the lake. In 1904 Mr. Newman surveyed, subdivided and mapped that portion of the farm which was bordered by the waters of the lake on the west into cottage sites, and subsequently filed a map of this subdivision in the Steuben county clerk's office. The map shows the westerly boundary line of his farm, the width and depth of the various lots, and two proposed roads; one extending from the lake easterly to the main highway leading from Hammondsport to Keuka, and the other extending along the rear, parallel with the lake front of the subdivision, and connecting with the road leading out to the main highway. The lots in the subdivision can be reached by land only over these two roads. The actual westerly line of the road, as laid out on this map and extending along the rear of the tier of lots as physically laid out by Newman and as recognized and acknowledged and used by all purchasers of lots in the subdivision, including the defendant in this action until some time in 1926, was substantially parallel with the shore line of the lake, and, at the point where defendant's lot lies, slightly more than 125 feet easterly from the low-water mark. The first deed of any portion of this subdivision was apparently given in 1907, and specifically conveys lot No. 16 as shown on the aforesaid map, and describes the easterly boundary line of the lot as the westerly boundary line of the proposed road extending along the rear of the tier of lots. Thereafter seventeen lots were conveyed, many of them by lot number as shown on the map. All of the deeds described the north and south lines of the lots as running from the lake shore to the proposed road or fixed the length of the side lines so that they would extend from about the low-water mark to the westerly line of the proposed road, and many of them described the rear lines as extending along the proposed road as shown on this map.

The legal presumption, both as to the grantor and the grantee in a conveyance, with respect to a highway or road, is that one who owns both sides of the highway is presumed entitled to the fee of the road subject to the public easements. (*Bissell* v. *New York Central Railroad Co.*, 23 N. Y. 61.) A boundary generally by and along a street, road or highway carries title to the center, although the street is not mentioned in the conveyance, subject only to the public easements (*Bissell* v. *New York Central Railroad Co.*, 23 N. Y. 61; *Perrin* v. *New York Central Railroad Co.*, 36 id. 120; *Terrett* v. *New York & B. Steam Saw-Mill & Lumber Co.*, 49 id. 666), unless by words or by necessary construction of the wording of the conveyance or by specific terms of exclusion the contrary must be found. Newman had at all times retained title to and been in possession of the portion of his farm east of and

bordering upon the road running along this tier of lots. By the descriptions in the various deeds to the lots of the subdivision where definite lengths of side lines are given, as these lot side line distances fit in exactly between the shore line and the westerly line of the road, it must be found that the grantor excluded the fee to the road from the grants. (*Jones* v. *Cowman,* 4 N. Y. Super. Ct. [2 Sandf.] 234.) Nevertheless, the sale of each lot on the side of this roadway as laid out on the map carried with it from Newman an easement or right of way over this road, for use of all lot owners in common, even though the highway never became a public highway by dedication and acceptance and the abutting owners and grantees can insist that the space between the exterior lines of the highway be left open forever for their use for any reasonable or useful purpose. (*White's Bank of Buffalo* v. *Nichols,* 64 N. Y. 65.) These roadways, and particularly the roadway in the rear of the tier of lots as mapped and as specifically laid out by Newman, have been definitely defined and used more than twenty years, generally by owners of lots along the lake and others who might have occasion to use them, and the road in question along the rear of the lots has become a monument which may be deemed fixed for the purpose of deciding where the land lies as set out in the various grants. During all of this period Newman kept these roadways open and free from grass, weeds and obstruction. A definite defined roadbed, open and visible, existed. Each of the purchasers of lots has erected a cottage and outbuildings on his lot, and all, with the exception of defendant, have placed their buildings to the west of the line which Newman claimed was the westerly line of the road. No one, other than defendant, at any time since 1904 has raised any question as to the location of either of these roads. No one, except Newman, has attempted to secure any control over or claimed any title to any roadways as laid out by Newman and as shown on the map, and all lot owners, except defendant, since 1926 affirmatively acquiesced in the roadways as so laid out, defined and generally used.

In 1926 defendant erected a garage within this roadway immediately at the rear of his lot, but neither Newman nor his grantees, including this defendant, had any power to do any act which would impair the easement or restrict the use of the right of way. (*White's Bank of Buffalo* v. *Nichols, supra.*)

On September 16, 1914, defendant contracted to purchase from Newman a part of lot 11 as shown on the map. The contract contained this description of the part to be purchased: " Commencing at the shore of Lake Keuka at an elm tree in the center of the gulley between lands hereby contracted to be conveyed

and the lands of George Bell and running thence up the center of said gulley southeasterly 125 feet; thence northerly fifty feet on a line parallel with the shore of said lake; thence on a line parallel to the line firstly above described 125 feet to the shore of said lake, and thence along the shore of said lake to the place of beginning."

On September 22, 1919, Newman deeded that property to defendant by the same description. Previous to making the contract, Newman stated to defendant that the land he proposed to sell extended back from the high-water mark of the lake. He did not state to defendant that he intended to convey to him the entire amount of lot No. 11, but only the southerly portion thereof above described. He specifically stated to the defendant that the lot to be conveyed to him extended back to the road 125 feet from an elm tree, and he pointed out at that time to the defendant this road along the rear of the tier of lots. The defendant was familiar with the layout of this road, and had used it previous to this time, and was at the times of the making of the contract and conveyance thoroughly familiar with the map on file. There can be no doubt that defendant knew that the land which he proposed to buy extended only to the roadway as laid out on the map and as specifically laid out by Newman and as clearly defined at the time the contract was entered into. Defendant went into possession of his lot immediately after the execution of the contract, and prior to 1926 commenced the construction of a garage to the west of the westerly line of the road defined as aforesaid. Defendant now claims that he has a right to construct this garage to the east of this line and thereby close the highway to traffic, because Newman conveyed to him a depth of 125 feet which, measured from an elm tree which he asserts Newman pointed out as the starting point, would carry him back over this road. But, regardless of where the elm tree in dispute was located, this road as platted on the map and referred to in the various deeds and physically laid out by Newman, constituted a monument of which defendant not only had full knowledge when he purchased the property, but which was also specifically pointed out to him at that time as the rear boundary line of his property, and the grant cannot be extended by implication or conjecture or by circumstances not existing at the time of the grant so as to include any part of the road. (*White's Bank of Buffalo* v. *Nichols*, 64 N. Y. 65.)

The rule is well settled that a conveyance is to be construed in reference to its visible locative calls, as marked or appearing on the land, in preference to quantity, course or distance; and any particular may be rejected if inconsistent with the other parts of

the description, and sufficient remains to locate the land intended to be conveyed. (*Robinson* v. *Kime,* 70 N. Y. 147; *Brookman* v. *Kurzman,* 94 id. 272, 276; *Oakes* v. *De Lancey,* 133 id. 227.) Even if the northerly and southerly side lines and depth of defendant's lot must be shortened by making the east boundary conform to the fixed and definite monument existing at the times of the contract and conveyance or bounds called for by the grant, or the starting point is in doubt, such distance must be shortened or the starting point disregarded. (*Wendell* v. *Jackson,* 8 Wend. 183; *White* v. *Williams,* 48 N. Y. 344.)

The defendant having accepted the deed and entered into possession of the property, recognizing the westerly line of the road as physically laid out by the plaintiff, as the easterly boundary line of his property, is as effectually bound as though he had himself located that line. (*Rogers* v. *Eagle Fire Co.,* 9 Wend. 611, 618; *Spaulding* v. *Hallenbeck,* 35 N. Y. 204; *Worrall* v. *Munn,* 5 id. 229.)

The main point of contention at the trial was the location of the elm tree referred to in the description as the point from which the boundaries of the lot start. The defendant has asserted and produced witnesses who have testified that the elm tree referred to and pointed out by Newman before the contract was executed was located approximately twenty-four feet east of the high- or low-water mark of the lake. If the tree was located at the point claimed by defendant, one hundred and twenty-five feet easterly therefrom would extend to substantially the easterly boundary line of the road as laid out by Newman, and would give to the defendant the fee in the road as laid out at the rear of his lot. Starting at the tree which he asserts is the starting point, and following the description, there would be a space of twenty-four feet in depth, the full width of his lot, on the lake front which he claims was in the lot conveyed. Newman did not point out this particular elm tree as the starting point of the description, nor does it stand in the center of the gulley. There is ample evidence to show that the elm tree referred to in the description stood in the shore line in the mouth of the gulley and at least twenty-four feet nearer the low-water mark proper than the elm tree which defendant claims marks the starting point for the description of his property. Prior to 1914 an elm tree of considerable age stood on this shore line in a line along the water's edge with a row of elms. Some time prior to 1914, through action of the lake, this tree proper began to topple into the lake, and an effort was made, by placing concrete and stone around the base and over the roots, to protect it from being washed out by high water or destroyed by ice. The branches of this tree had been

used by some of the cottages for the suspension of a swing over the water for use by children. The roots of the tree were in existence and plainly visible in the center of the gulley and at the mouth thereof at the time the contract was executed, and it is this tree or the remains of this tree to which Newman referred at the time of his conversation with defendant during the negotiations for the sale of the property. The roots of this tree were plainly visible at the time of the trial. The location of this tree in the shore line is approximately one hundred and twenty-five feet, measured up the gulley from the westerly line of the road as physically laid out by Newman, and is in harmony with a construction which defines the shore, as referred to in the deed, as the space between the high- and low-water mark of the lake. If the tree referred to were twenty-four feet to the east of the low-water mark, its base would be located at a point at least four and four-tenths feet higher than the highest waters of the lake have ever reached.

It will be noted that the elm tree referred to is stated in the deed to stand on the shore of the lake. It is definitely settled that, where the description in a deed bounds the lands by navigable bodies of water where the tide ebbs and flows or by the shore or shore line thereof, the fee ends at the high-water mark. (*Sage* v. *Mayor*, 154 N. Y. 61; *Clarke Estate* v. *City of New York*, 165 App. Div. 873; *People* v. *Canal Appraisers*, 33 N. Y. 461.) The meaning of the term "shore" or "shore line," in descriptions of land lying along non-navigable bodies of water, cannot be arbitrarily fixed. It has been held that grants of uplands along the shore line of non-navigable bodies of water carry the fee only to low-water mark (*Child* v. *Starr*, 4 Hill [N. Y.], 369; *Starr* v. *Child*, 5 Den. 599; *Halsey* v. *McCormick*, 13 N. Y. 296; *Gouverneur* v. *National Ice Co.*, 134 id. 355), and this doctrine has been approved in *City of Geneva* v. *Henson* (195 N. Y. 447, 463). It is not necessary to a decision here to determine whether Lake Keuka is a non-navigable body of water, although it might seem to be non-navigable water within the accepted meaning in this State. (*Ten Eyck* v. *Town of Warwick*, 75 Hun, 562.) The terms "shore" or "shore of said lake," as referred to in the deed from Newman to defendant, where the southerly side line measurement of the lot from the westerly line of the road monument together with the elm tree fixes the starting point, may properly be defined as intended to mean and as meaning the space between the low- and high-water mark of the lake. (*Oakes* v. *DeLancey*, 133 N. Y. 227.) It is in this space, at the mouth of the gulley referred to in the deed, that the elm tree, named as the starting point for the description stood, and this elm tree, so located, is approximately 125 feet from the west-

erly boundary line of the road as physically laid out and mapped by Newman and as it existed as a definitely defined monument at the time defendant took title to his property.

The only other question remaining is whether there should be a reformation of the deed so that the grant should include a lot seventy feet wide at the rear. Defendant asserts that Newman agreed to convey to him a lot seventy feet wide in rear. Newman had a lot only fifty feet wide to convey. The property on each side of that fifty-foot strip had been conveyed to others. Defendant accepted his contract describing his lot fifty feet wide, went into possession of a lot of that width, and has remained in possession thereof. He accepted a deed some years later than the contract, in which the width of the lot was specified at fifty feet, and placed that deed on record. He testified that he was familiar with the descriptions in both instruments, and that he had no discussion with Newman about the width of the lot after the execution and delivery of the deed. It must be held that there was no agreement between Newman and defendant that the former should convey to the latter a lot seventy feet in width.

It necessarily follows that defendant is a trespasser upon the road standing back of the tier of cottage lots and that he should be required to remove his garage therefrom. His conduct has been inexcusable from any viewpoint. His claim to right of possession and use of the roadway has been without the slightest basis or merit, and the judgment should award plaintiff suitable damages for such trespass, and the taxable costs of this action.

Let suitable findings and a decree be prepared and submitted. The parties may be heard at the courthouse in Hornell at twelve-thirty o'clock P. M. September 20, 1927, on the question of damages and any additional allowance that may be desired. So ordered.