CHARLES NOBLE, Plaintiff, *v.* ECHO LAKE TAVERN, INC., Impleaded with Others, Defendants.

Supreme Court, Warren County, August 27, 1931.

*L. E. Crandall [John H. Barker* of counsel], for the plaintiff.

*James McPhillips,* for the defendant.

*Irving E. Meller,* for impleaded defendants, Samuel Carlen and Lena Barish Carlen.

*Harry E. Reoux,* for impleaded defendant Maud West.

ROGERS, J. The defendant's record title does not give it the right to use the waters of Echo lake, except in the small portion included within the limits of the land described in the deed of Noble to Raymond, and except to take therefrom for domestic purposes water for use upon the acre parcel conveyed by the said deed and the two-acre parcel mentioned in the said deed and then owned by Eliza Ann Raymond, which lay just across the road from the acre parcel conveyed to her by Noble. The words in

the Noble deed " and far enough into said pond to furnish water " imply a limitation that precludes the operation of the rule of construction that a description bounding a conveyance by or on a stream or pond will be regarded as running to the center. That the defendant has no record title to the bed or waters of the lake, except as aforesaid, was decided upon the motion of the defendants Carlen to dismiss the supplemental summons and cross-complaint of the Echo Lake Tavern, Inc. This decision was affirmed by the Appellate Division (228 App. Div. 743). Even if the Noble to Raymond deed included some further part of the bed of the lake, under the decision in *Calkins* v. *Hart* (219 N. Y. 145) it would be a very trifling portion thereof, for Echo lake, being a nearly oval body, a line drawn through the longest diameter of the lake and lines extending at right angles from the side lines of the property to the diameter line would outline a very small portion of the bed of the lake.

The defendant has not gained a presumptive right to use the lake for boating, swimming or fishing. Its user and that of its predecessors has not been adverse. It has been permissive, like the user of the general public in the vicinity. Very clear proof of adverse user under claim of right is necessary to acquire prescriptive rights to use the waters of a lake, otherwise it would be exceedingly difficult for the owner to protect his title, especially when the lake is used permissively by the public. There must be some specific assertion of right, otherwise the user will be presumed to be either permissive or trespassing. (*Commonwealth Water Co.* v. *Brunner*, 175 App. Div. 153, 159; *Nellis* v. *Countryman*, 153 id. 500.)

In 1874 Raymond conveyed the acre parcel and the two-acre lot to Hall, and in 1879 Hall conveyed to Sheppard. These conveyances contain the same description of the acre parcel as in the deed Noble to Raymond, but in 1887, when Sheppard conveyed to West and Hill, the description was changed so as to read " and in the Bond's Pond far enough so that a line from this point running in a straight course to said Burke's lands shall give access to the water of said pond; thence northerly extending into said pond far enough for the above purpose to lands in possession of said Burke." The language of the Sheppard deed was continued in the mesne conveyances down to the deed by which the defendant acquired its title. It is claimed the deeds since 1887 and their recordation gave constructive notice that the user of the pond by the grantees in such deeds were adverse. It is contended that the words " access to the water of said pond " implies access for the purpose of general use of the waters including swimming, boating and fishing. Inasmuch as the deed of Noble to Raymond gave the right to take

water for domestic purposes and since the later deeds use the words "water" and "waters" it may fairly be implied that the access intended was for the purpose of taking water for domestic purposes. The color of title by virtue of this language is insufficient to make the user adverse. The Wests kept a few boarders who used the pond, but there was no such user by the owners of the acre parcel or their guests that would attract special attention until 1924, when the Carlens acquired the property for boarding-house purposes and entertained on an average twenty-five to thirty guests.

The defendant invokes equitable estoppel. It may not be doubted that the plaintiff knew that expensive buildings were being erected by the defendant on its property for the purpose of accommodating additional guests and that he appreciated that the defendant expected these guests to use the waters of the lake and he probably also appreciated that the defendant would not increase its capacity to accommodate summer boarders if it had known definitely that its guests could not use the lake. It has been often stated in the law books: " If one maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent." In conscience he ought to speak when there is a right and duty to speak. The doctrine has only been applied in cases where conscience dictates the performance of the duty to speak. A duty to speak does not arise except when the owner's property is being improved, or appropriated by another. One may not sit by passively and allow his property to be sold or conveyed, nor may he silently suffer it to be improved with expensive structures and later receive the aid of equity. But where the neighbor, as here, is building structures on his own property, and there is no actual invasion of the plaintiff's property, there arises no duty to speak, even though the plaintiff appreciates that the defendant, in extending its boarding-house capacity, fully expects that its guests will be afforded the use of the lake.

In *New York Rubber Co.* v. *Rothery* (107 N. Y. 310) the opinion states: " The simple case is presented of an owner of land standing by and seeing an owner of adjoining land make such use of his own land, as he had a right to without informing him that if he proceeded thereafter to do an illegal act it would not be permitted. The defendants had a right to excavate on their own land and to build such a factory as they chose, but even if they had no right to dig the mill-race and let the water in it, and thus, possibly, divert the water from the stream, the owner of the adjoining land was not bound to interfere or protest. She had the legal right to

acquiesce in the action of the defendants, so far as to refrain from interference, and her simple knowledge that the defendants were thus engaged did not require her to object under penalty of the loss of her legal rights."

This case has been frequently and reasonably cited by the courts and expresses the law of estoppel by silence as it now exists. Although the plaintiff knew that defendant was expending large sums of money on its own lands in the expectation that its guests could use the lake, this knowledge did not create a legal duty requiring plaintiff to speak notwithstanding plaintiff's conscience may have been pricked by his silence.

It may be that defendant's new dock and its water pipe extended out into the lake beyond the small portion thereof conveyed by the Noble to Raymond deed. Even so, the dock was an inexpensive structure and the pipe could easily be shortened. Neither may be deemed a valuable improvement. The principal improvements, causing the large expenditure, were the bungalows, dining hall, kitchen and water system, all built on defendant's property.

Even if the plaintiff worked two weeks in 1925, in helping to construct the dining hall, as claimed by defendant, he was thereby simply aiding the defendant in doing that which it had a lawful right to do on its own lands. He was doing nothing inconsistent with his own title. In the three cases from other States cited in defendant's brief, the complaining party aided in the very construction work that created the invasion of his rights and thereby became estopped from asserting that he had not given the defendant a parol license permitting the work to be done.

The improvements were completed long before September, 1926, when the plaintiff accepted the job as caretaker of the defendant's property. Thereafter, according to the testimony of Mr. Nudell, the corporation made further substantial expenditures, but as far as the evidence discloses these expenditures were not for new construction. Defendant bought additional lands and the Carlens sold out their interests to Mr. Nudell, but it does not appear that any valuable improvements were made that would be apparent to the plaintiff.

In any event, equitable estoppel is not available to one who is not justified in believing that he has title to the rights in question. Mrs. Carlen when she purchased the property had the title examined by a competent attorney, who presumably discovered the limitation of ownership in the waters of the lake by her grantor, as prescribed in the Noble to Raymond deed. Before the improvements were made another attorney examined the title for the defendant. The defendant, therefore, had constructive, if not actual, notice of the

record title and plaintiff owed it no duty to apprise it of that which the record disclosed. (*Viele* v. *Judson*, 82 N. Y. 32, at p. 40.)

The plaintiff is entitled to judgment declaring him to be the owner of the fee of all the bed of the lake comprised within the limits of the deed from Marsh to Noble, dated February 25, 1862; that defendant's rights are limited to ownership in fee to the small portion of the lake described in the Noble to Raymond deed dated April 11, 1865, and to an easement to take water from the lake for use upon the acre parcel conveyed by said deed and the two-acre parcel mentioned in the description then being owned by Raymond, as it was the intent of the parties that Raymond could take enough water for both parcels, and to an injunction restraining any other use of the lake by the defendant, its agents, servants, employees and guests.