Carrol S. Walsh, J.
This is an action and proceeding to determine title of plaintiffs in and to certain lands along the shore of Brant Lake, Warren County, New York, and to waters and lands thereunder to the center or thread of the said lake, within the boundaries of plaintiffs’ premises, and also for trespass against the defendants Barton and the defendants Pratt, owners of adjoining and abutting properties.
By deed dated September 21,1943 Bernard Barton and Rachel B. Barton, his wife, conveyed a parcel or lot of land to the plaintiffs, lying between Route No. 8 and the shores of Brant Lake, in the Town of Horicon, Warren County, New York. The applicable and pertinent part of the description for purposes of this lawsuit is as follows: “ northerly along the easterly line of said Day lot, being the westerly line of the lot hereby conveyed, to the shores of Brant Lake; thence, easterly along the shores of Brant Lake twenty-five (25) feet to a point; thence, southerly ”,
It is plaintiffs’ contention that by this description title to lands under the waters of Brant Lake, to the center thereof, extending from the upland, was also conveyed to them. Such is not the case. The rule is that if a description in a conveyance runs the title along dry land such as the bank or shore, there is an express restriction which excludes or reserves title in the nonnavigable waters, whereas, if the boundary touches the water or is along the water or by the water, and not the *242 dry land, the presumption remains that title is carried to the center of the water. A description carrying the boundary ‘ * by the shore ” or “ to the bank ” has been held to constitute clear and express restriction and not to convey title to the center of the water. These phrases clearly express a limitation of conveyance to the edge or margin of the waters. (Halsey v. McCormick, 13 N. Y. 296; People v. System Properties, 2 N Y 2d 330; Town of Guilderland v. Swanson, 29 A D 2d 717.)
Even though plaintiffs gave testimony that defendant Bernard Barton was physically present, with plaintiff Armand Simone and one Robert Carlino and a real estate broker, since deceased, on the premises in question prior to the conveyance, pointing out the boundaries and corners and placing stakes or pins in the water at the edge of the land, which for purposes of clarification only are now referred to by me as the northwest and northeast corners; and despite plaintiffs ’ arguments that it was the intention of all concerned, including defendant Barton, as shown by the negotiations leading up to the purchase and conveyance and the acts of defendant Barton, that the conveyance was intended to convey title to the center of the lake, I hold that the words “ to the shores ” and “ along the shores ” are words of limitation and do not permit a finding of title in the grantees to any part of the land under the waters of the lake. The description is clear and unmistakable. All conversations and agreements leading up to the making of the deed are deemed merged in the written contract, and the boundaries cannot be extended by parol evidence as to what was said before the making of the deed. (Tripp v. Richter, 158 App. Div. 136.)
However, plaintiffs’ title extends to low-water mark and covers the beach on the northerly portion of the lot. In fact, this in conceded by defendants in the brief submitted by them. Bounding a lot on a small, inland, fresh water lake, by the “ shore ” or “ shore of said lake ”, and running the description “ along the shore ”, in the absence of any words of limitation or reservation, includes the space between the low-water and high-water marks of the lake. The doctrine established in Child v. Starr (4 Hill 369) and Starr v. Child (5 Denio 599) that bounding a grantee along the shore excluded the bed of the body of water and limited the boundary to low water mark, was affirmed in Halsey v. McCormick (13 N. Y. 296, supra), wherein the court held that in a deed running the description to “ the hank of the * * * creek ”, that such deed carried the grantee to low instead of high-water mark, stating that it would be unreasonable to intend that by the description in that *243 conveyance the parties contemplated that there should be a strip of land between the grantee’s boundary and the water. This doctrine was reaffirmed in City of Geneva v. Henson (195 N. Y. 447). It is definitely settled that where a description in a deed bounds the lands by navigable bodies of water where the tide ebbs and flows as by the shore or shore line thereof, the fee ends at the high water mark. The meaning of the term “ shore ” or “ shore line ” in descriptions of land lying along nonnavigable bodies of water cannot be arbitrarily fixed. It has been held that grants of uplands along the shore line of non-navigable bodies of water carry the fee only to low-water mark. The terms “ shore ” or “ shore of said lake ” as used in a specific deed may properly be defined as intended to mean and as meaning the space between the low and high-water mark of the lake. (Hunter v. Van Keuren, 130 Misc. 599.)
It thus appears to me, and I so hold, that where a description in a deed to a lot or tract of land bounded by an inland, fresh water, nonnavigable lake runs to the shore and thence along the shore, while being words of restriction excluding title to the lands under the waters of the lake to the center thereof, does convey title to low-water mark and substitutes a legal presumption that it was intended to convey the shore, the land between low-water mark and high-water mark, and only an express reservation or restriction in the deed, such as running the description to the shore at high-water mark, will rebut the presumption and exclude or reserve title in the shore or beach between low and high-water mark.
Even if it were to be held that plaintiffs’ title did not extend to low-water mark, plaintiffs have, in any event, proven and established title to all of the land and beach on the northerly portion of the premises between high-water mark and low-water mark by adverse possession under either the provisions of sections 521 and 522 of the Real Property Actions and Proceedings Law or under sections 511 and 512 of said law, it being immaterial in this specific case whichever of the two separate and distinct methods of establishing adverse possession were to be employed. Although such an adjudication may not be necessary in view of the holding of this court, above, and concession by defendants, as set forth in their brief herein, that they do not take issue with the claim of plaintiffs to title extending across the beach and into the waters of Brant Lake, it is nonetheless made to eliminate any question as to title of such area and to confirm the title of plaintiffs therein and thereto. The entire testimony and evidence in this case sustain the burden of proof of the plaintiffs and establishes that they occupied *244 and used all of the land within the boundaries of the lot between the highway on the south and the water’s edge, wherever located from time to time, on the north, and that this possession was hostile and under claim of right, actual, open, notorious, exclusive and continuous, for the required statutory period. The statutory period in this instance is 15 years, the current statutory period of 10 years not being applicable to a situation of adverse possession which commenced prior to 1963.
The testimony and maps received in evidence show and reveal-marked and distinct change in the water line or shore line between September, 1948 and August, 1970, as a result of accretion. This alluvian formation has moved the margin of the lake, and consequently the boundary of plaintiffs’ lot as well as the boundaries of the adjoining parcels, substantially to the north, so that there is now an area of dry land which was, before the accretion, an area covered by water. An alluvian formation inures to the benefit of the riparian owner, who acquires the title thereto, within his boundaries as determined. Where the location of the margin or bed of a stream or other body of water which constitutes the boundary of a parcel of land is gradually and imperceptibly changed or shifted by accretion, as occurred in this instance, the margin of the stream or body of water, as so changed, remains the boundary line of the tract, which is extended accordingly. The owner of riparian land, the plaintiffs in this case, thus acquires title to all additions thereto or extensions thereof by such means and in such manner. The alluvian formation or deposit must be made by natural causes, gradually and imperceptibly, and the proof in this case establishes that this was the means and manner of such formation.
A problem is created, however, in determining the side boundary lines between adjoining owners that will equitably apportion the accretion among them. The over-all theory of the many decisions seems to be to employ that method of establishing or fixing side boundary lines that will share the accretion between abutting landowners on a proportional basis and also to preserve to each of them, as nearly as possible, as much frontage on the water as they previously had. (O’Donnell v. Kelsey, 10 N. Y. 412.)
Having examined the several maps and surveys of the areas and parcels involved, this court concludes that it would be unfair and inequitable to employ the method of extending the side boundaries in a straight line, on the same angle, because by so doing, the extension of the westerly boundary line of plaintiffs ’ lot in a straight line on the same angle would result in their being entirely cut off from the water. It also appears *245 that, in this case, it would be inequitable to extend the boundary lines at right angles to the shore. The fairest method appears to be to locate the present northeast corner of plaintiffs’ lot, on the margin of the water at the lake at low-water mark, which is also the northwest corner of premises of Pratt located immediately east of plaintiffs ’ lot, and run thence from that point south 14 degrees west a distance of 25 feet, and thence run southerly from that point to the original northwest corner of plaintiffs’ lot as it was established and fixed in September, 1948, the date of the conveyance. This preserves to plaintiffs as much shore frontage as they previously had, without materially reducing, if reducing at all, the shore frontage which defendants Barton previously had. The easterly boundary of plaintiffs’ lot over the alluvion will be established by running a line from their presently located northeast corner southerly to the original northeast corner of the lot as established in September, 1948, which does not reduce or diminish in any degree the shore frontage of the Pratt property on the east. I therefore find, hold and establish that plaintiffs have title to that portion of the alluvion between the boundary lines as fixed and determined by this court in accordance with the method employed above to fix and determine the same.
The evidence and testimony clearly establish that the defendants Barton, by the installation of log cribbing and filling it in with dirt, gravel, sand and other material, in August of 1970, placed the same in such a position that it caused these plaintiffs to be cut off from access to the shore and the waters of the lake, and constitutes a trespass in that cribbing, dirt, gravel and the like were placed and thrown upon lands belonging to these plaintiffs. No evidence was produced by the defendants to refute or rebut the title of the plaintiffs to the area in question nor to prove title to the same to be in the defendants nor their right to such use, occupation or possession of the area in question. Accordingly, it is adjudged, ordered and directed that defendants Barton immediately remove any and all of the cribbing and fill from the premises of plaintiffs and from the adjoining waters of Brant Lake in front of the premises of the plaintiffs, so that plaintiffs shall have the free and unrestricted use, occupation and enjoyment of their lands, and the free and unrestricted right of access to the waters of Brant Lake, within the boundaries of their lot as herein established.
There having been no damages proven by plaintiffs by reason of defendants’ trespass, none are awarded, but in the event defendants refuse or fail to remove the encroachments forthwith, plaintiffs shall have the right to return to this court for *246 the fixing of damages against defendants Barton for such refusal or failure.
Finally, I find that plaintiffs have established their right to enter and use the waters of Brant Lake for boating, bathing and fishing by prescription. The proof, unrebutted, establishes that plaintiffs and members of their families used and occupied the adjoining waters of the lake for the aforesaid purposes continuously from the time they acquired the premises, and for the required statutory period of 15 years or more. They certainly did so under claim of right, whether mistaken or not, because it is obvious from their testimony and from the character, location and suitability of the lot itself, in relation to the water, that the value to them and their prime purpose in acquiring it was to be able to enter and enjoy the water for the recreational purposes aforesaid. The proof is more than sufficient to sustain plaintiffs’ burden and I find and hold that plaintiffs used, occupied, and controlled the waters of Brant Lake adjoining their premises, adversely and hostile, openly, notoriously, exclusively, continuously, and founded on the assertion of right, for the required period and without in any way being rebutted, and have thus established their right to enter upon and use the adjoining waters of the lake by prescription based on adverse user, free from interference from anyone. As I found in the case of Brant Lake Shores v. Barton (61 Misc 2d 902), I also find the facts and manner of user in this case distinguishable from those in Tripp v. Richter (158 App. Div. 136, supra); Commonwealth Water Co. v. Brunner (175 App. Div. 153), and Noble v. Echo Lake Tavern (142 Misc. 427).
Accordingly, I find and adjudge as follows: That plaintiffs are seized of the premises described in the deed dated September 21, 1943 from Bernard Barton and Rachel B. Barton, his wife as grantors, to the plaintiffs herein, as grantees, in fee simple absolute, the northerly boundary line of which is the low-water mark of Brant Lake, and which said premises include the accreted alluvion within the boundaries fixed herein, but which excludes title to the waters and lands under the waters from the low-water mark to the center or thread of the lake; that plaintiffs are seized of the right by prescription to use the waters of Brant Lake adjoining their premises for boating, bathing and swimming; that all and each of the defendants and every person claiming under them are barred from all claim or interest or estate whatsoever in the said premises owned by the plaintiffs and barred and enjoined from any and all interference with, encroachment upon and prevention of the right by prescription of the use and occupation of the adjoining *247 waters of Brant Lake by plaintiffs for boating, bathing and fishing; that defendants Barton, having trespassed upon the premises of the plaintiffs and having unlawfully interfered with and prevented the exercise of plaintiffs’ prescriptive rights, remove the log cribbing and the fill from the premises of plaintiffs and from the waters of the lake in front of and adjoining the plaintiffs’ premises forthwith, and to the extent necessary to prevent and eliminate dirt, gravel, sand and other material from being washed or cast from the remaining cribbed area upon or in the waters adjoining plaintiffs’ premises, and upon defendants’ failure or refusal to do so, that plaintiffs may return to this court for the fixing of damages occasioned by such failure or refusal; and that plaintiffs recover against defendants Bernard A. Barton and Geraldine Barton their costs and disbursements in this action.
As to the cause of action of plaintiffs against the defendants Pratt for trespass, the court finds the evidence insufficient and therefore this cause of action is dismissed, without costs.