■ James Knapp et al., Appellants, v James R. Hughes et al., Respondents. [808 NYS2d 791]—

Cardona, P.J. Appeal from an order of the Supreme Court (Lebous, J.), entered June 16, 2004 in Broome County, which, inter alia, granted defendants' motions for summary judgment dismissing the complaint.

Plaintiffs commenced this action pursuant to RPAPL article 15 alleging that they own title to approximately 12 acres of land beneath the waters of the westerly portion of Perch Pond, located in the Town of Colesville, Broome County. They claim that defendants, owners of parcels abutting the west side of the pond, impermissibly intruded upon their property by, inter alia, engaging in swimming, fishing and other recreational pursuits. All of the parties' land was, at one point, owned by Charles Juriga, who, in 1962, inherited a substantial amount of property abutting the westerly side, as well as the above-mentioned 12 acres of land beneath the pond. As relevant herein, the southwestern portion of Juriga's waterfront property was generally divided into lots numbered 1 through 14 (with lot No. 1 located at the southern end of the property),[1] while the northwestern portion was divided into the remaining lots, which are not numbered. This litigation primarily concerns that part of the above property that originally was conveyed from Juriga to Matthew Forrest and also separate land which passed from Juriga to Anthony L. Furlano.

Specifically, in 1963, Juriga conveyed to Forrest a 30-acre wa-

---

1. The only owners of this land not represented herein are the owners of lot Nos. 6 and 7, who are not parties in this action.

terfront parcel which was located between lot Nos. 4 and 5.[2] That deed stated that the boundary of the parcel ran "along the southerly bounds of Perch Pond." Following Forrest's death, title to all of his Perch Pond property passed to his nephew, defendant Matthew E. Guokas, and his wife, defendant Patricia L. Guokas. As to the remainder of the land at issue in this action, the record discloses that, in 1968, Juriga conveyed a large portion of the land abutting Perch Pond to Furlano. The 1968 Furlano deed indicated that the acquired property bordered "along the edge of Perch Pond," however, a separate clause at the end of the deed states: "The Grantor *further* conveys any rights which he may have in and to the lands under the waters of Perch Pond which bound and abut onto the lands hereinabove conveyed to the Grantee herein" (emphasis added).

In 1973, Furlano and his wife conveyed a portion of the property obtained from Juriga to William Hall and Robert Mallery, doing business as Robil. That deed (hereinafter the 1973 Robil deed) described the land as running "to a point at the waters edge" and "along the waters edge of Perch Pond." Notably, this deed did not contain language similar to the 1968 Furlano deed indicating that land beneath the water was also being conveyed. It is from the 1973 Robil deed that defendants Charles Buelow, Concetta Buelow, Paul Hauptmann, Joanne C. Hauptmann, James W. Walsh, Jr., Phyllis Ann Walsh and James R. Hughes trace their deeds to the unnumbered lots. Additionally, in 2002 the Guokases acquired lot Nos. 13 and 14, which can also be traced to the 1973 Robil deed. Eventually, in 1993, the Furlanos conveyed the remainder of their property abutting the pond, i.e., lot No. 8, to Richard Burden and Barbara Burden. The property conveyed therein is described as running "along the edge of water of [the pond]," however, there is also a paragraph stating that what is intended to be conveyed is "all remaining lands of Grantors." The Burdens then conveyed this property to plaintiffs in a deed using identical language.[3]

Following commencement of this action, defendants answered and asserted various affirmative defenses and counterclaims alleging, inter alia, that they own title to the land beneath the pond abutting their respective properties and, alternatively, they obtained the right to use the waters and the land beneath

---

**2.** Defendants Matthew E. Guokas and Patricia L. Guokas ultimately acquired lot Nos. 1 to 5 through inheritance or purchase, however, they state in their brief that "they claim neither title to land under Perch Pond nor the right to use the waters of Perch Pond by virtue of their ownership of these lots."

**3.** Plaintiffs also own lot Nos. 9 to 12, however, their claim to the 12 acres beneath Perch Pond emanates solely from their deed for lot No. 8.

the pond by adverse possession. The parties cross-moved for summary judgment and Supreme Court granted summary judgment in favor of defendants finding that, pursuant to their deeds, defendants all owned littoral rights to a center point of Perch Pond. The court dismissed the complaint, prompting this appeal.

Initially, we find Supreme Court properly concluded that the Guokases have littoral rights by deed with respect to the 30-acre parcel originally conveyed to Forrest by Juriga in 1963. Plaintiffs do not dispute that the language in the 1963 deed, stating that the property line ran "along the southerly bounds of Perch Pond," conveys rights to the land underneath the water (*see White v Knickerbocker Ice Co.*, 254 NY 152, 156 [1930]; 1 NY Jur 2d, Adjoining Landowners § 80). However, plaintiffs challenge the Guokases' entitlement to littoral rights on the basis of a so-called "corrective deed" signed only by Juriga that was recorded in 1968. That deed purported to change the language in the 1963 deed to read "along the southerly bounds of Perch Pond *Road*" (emphasis added). In maintaining that this 1968 deed is effective against the Guokases, plaintiffs appear to argue that a grantor of land, following the execution and recording of a deed conveying a certain amount of land to a grantee, may thereafter unilaterally execute and record another deed, significantly reducing the property granted in the first deed, and concomitantly claim that the second deed is proper without any indicia that the grantee accepted the deed diminishing the property rights obtained by reason of the first deed. Such is not the law. While there is no question that delivery and acceptance of a *beneficial* interest in favor of a grantee can be presumed by reason of an executed deed in the grantee's favor (*see Spencer v Carr*, 45 NY 406, 410 [1871]; *Schell v Schell*, 192 App Div 419, 421 [1920]; *Starbuck v Farmers' Loan & Trust Co.*, 28 App Div 272, 275 [1898]; *Safford v Burke*, 130 Misc 12, 15 [1927]; 43A NY Jur 2d, Deeds § 190), by no construction can the "corrected" deed recorded by Juriga in 1968 herein be considered beneficial to Forrest's interest, as opposed to a burden (*see* 4 Tiffany Real Prop § 1057). Accordingly, no presumption of delivery and acceptance exists, and we conclude that the 1968 deed purporting to take away Forrest's ownership of the property between Perch Pond Road and Perch Pond has no effect and is not properly included in the Guokases' chain of title for the 30-acre parcel.

Turning to the issue of record title to the land beneath the pond as traced from the 1973 Robil deed, we find persuasive plaintiffs' argument that the language in the deeds to defen-

dants[4] and their predecessors in title did not convey littoral rights. Notably, there is a presumption that the land beneath the water of nonnavigable ponds and lakes belongs to the adjoining landowners (*see Gouverneur v National Ice Co.*, 134 NY 355, 359, 364-365 [1892]; *Hammel v Camp Ranger*, 275 App Div 23, 25 [1949]). Conveyance of such adjoining property thus carries with it title to the center of the water unless otherwise specifically and clearly restricted (*see Gouverneur v National Ice Co.*, *supra* at 363-365). Where the words of the deed "touch the water" and there is no "express exception," title is carried to the center of the water (*White v Knickerbocker Ice Co.*, *supra* at 155-157; *see Mix v Tice*, 164 Misc 261, 269 [1937]). However, a boundary description which runs the title along dry land, such as the bank or the shore, constitutes such a restriction and excludes or reserves title to the body of water (*see White v Knickerbocker Ice Co.*, *supra* at 157; *Carlino v Barton*, 76 Misc 2d 240, 241-242 [1973]).

Here, the description contained in all the conveyances emanating from the 1973 Robil deed clearly set the boundaries at the *edge* of the pond, a phrase which touches the land and not the water (*see White v Knickerbocker Ice Co.*, *supra* at 156; 1 NY Jur 2d, Adjoining Landowners § 81). In fact, this Court has held that a boundary described as the "water's edge" was an exclusion of the land under the water (*see Town of Guilderland v Swanson*, 29 AD2d 717, 718-719 [1968], *affd* 24 NY2d 872 [1969]). Given the foregoing, we conclude that defendants' deeds do not carry title to any part of the pond or the land beneath it that can be traced from the 1973 Robil deed and, therefore, they were not entitled to summary judgment as to those claims.

Next, we must address plaintiffs' contention that defendants' counterclaims for adverse possession, which were not addressed by Supreme Court due to the court's determination that the 1973 Robil deed conveyed littoral rights to Perch Pond, should be dismissed. "Generally, where a party seeks to establish title by adverse possession, it is incumbent upon the party 'to demonstrate by clear and convincing evidence that for a period of 10 years it actually possessed the property in dispute and that such possession was open and notorious, exclusive, continuous, hostile and under a claim of right' " (*Kitchen v Village of Sherburne*, 266 AD2d 786, 786 [1999], quoting *Village of Castleton-On-Hudson v Keller*, 208 AD2d 1006, 1008 [1994]).

---

4. We note that, with respect to the issue of land tracing from the 1973 Robil deed, as opposed to the 1963 Forrest deed, references to "defendants" still include the Guokases as a result of their claim that they own littoral rights in connection with their acquisition of lot Nos. 13 and 14.

When the party seeking to establish ownership of the disputed property through adverse possession relies upon a written instrument to establish the element of claim of right, RPAPL 511 and 512 apply. In cases involving these sections, the evidence must establish continued occupation and possession for a period of 10 years (*see* RPAPL 511, 512; *Kitchen v Village of Sherburne, supra* at 786-787).

Here, defendants submitted affidavits setting forth the extent and duration of their use of the disputed property. Notably, the Buelows did not obtain their property abutting the pond until 1999 and the Guokases did not gain title to lot Nos. 13 and 14 until 2002. Inasmuch as neither party sets forth credible proof creating a question of fact as to whether they could "tack on" the use of their predecessors in title so as to meet all the elements of adverse possession, plaintiffs are entitled to summary judgment against these parties on these issues. As for the Walshes, the Hauptmanns and Hughes, each of them asserted adverse use in excess of 10 years. Specifically, the Walshes and the Hauptmanns presented sufficient evidence on each of the necessary elements of adverse possession so as to withstand dismissal of their counterclaims alleging adverse use (*see Parillo v Prunier*, 257 AD2d 807, 808 [1999]; *Carlino v Barton, supra* at 243-246; *Brant Lake Shores v Barton*, 61 Misc 2d 902, 905-906 [1970]). There are also factual questions remaining regarding those parties' claims of prescriptive easement (*see Gorman v Hess*, 301 AD2d 683, 685 [2003]). However, Hughes, in his deposition testimony, acknowledged that he does not believe that he owns the land beneath the pond and that his use thereof, at least since plaintiffs' purchase in 1994, was with plaintiffs' express permission, which he sought and was granted. Under the circumstances, plaintiffs' motion for summary judgment dismissing his claims must be granted.

In sum, Supreme Court properly granted summary judgment to the Guokases with respect to the issue of their entitlement to ownership of littoral rights regarding the 30-acre parcel, however, the court should have granted plaintiffs' motion to dismiss the Guokases' claim to said rights with respect to lot Nos. 13 and 14. Additionally, plaintiffs are entitled to dismissal of those claims asserted by the Buelows and Hughes. Finally, the matter must be remitted to Supreme Court for determination of the claims for adverse and/or prescriptive use asserted by the Hauptmanns and the Walshes.

We have examined the parties' remaining arguments and find them to be unpersuasive.

Mercure, Carpinello, Mugglin and Lahtinen, JJ., concur.

Ordered that the order is modified, on the law, without costs, by (1) reversing so much thereof as granted the motions of defendants James R. Hughes, Charles Buelow, Concetta Buelow, Paul Hauptmann, Joanne C. Hauptmann, James W. Walsh, Jr. and Phyllis Ann Walsh, (2) reversing so much thereof as granted the motion of defendants Matthew E. Guokas and Patricia L. Guokas with respect to their claimed ownership of littoral rights with respect to the parcels described as lot Nos. 13 and 14, and (3) reversing so much thereof as denied plaintiffs' motion for summary judgment against Hughes, the Buelows and the Guokases with respect to lot Nos. 13 and 14; defendants' motions denied to the extent specified and plaintiffs' motion granted to the extent specified and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

